STATE OF NEBRASKA, APPELLEE, V. ERWIN CHARLES SIMANTS,
APPELLANT.

517 N.W.2d 361

Filed May 13, 1994.   No. S-93-684.

Robert P. Lindemeier, of Lincoln County Public Defender's Office, for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

HASTINGS, C.J.

This is an appeal by Erwin Charles Simants from an order entered by the district court following the annual review of his commitment to the Lincoln Regional Center (LRC).

This court will not interfere on appeal with a final order of the district court in a mental health commitment proceeding

unless, as a matter of law, the order is not supported by clear and convincing proof. *State v. Hayden*, 233 Neb. 211, 444 N.W.2d 317 (1989); *State v. Simants*, 213 Neb. 638, 330 N.W.2d 910 (1983).

On October 17, 1979, after trial, the defendant was found not guilty by reason of insanity on six counts of murder in the first degree. On October 26, he was committed by the Lincoln County Mental Health Board to LRC for care and treatment. See *id.* On May 27, 1993, the district court conducted an annual review hearing in regard to the defendant's status, pursuant to Neb. Rev. Stat. § 29-3703 (Reissue 1989), which provides:

(1) The court which tried a person who is found not responsible by reason of insanity shall annually and may upon its own motion or upon motion of the person or the prosecuting attorney, review the records of such person and conduct an evidentiary hearing on the status of the person.

(2) If as a result of such hearing the court finds that such person is no longer dangerous to himself, herself, or others by reason of mental illness or defect, and will not be so dangerous in the foreseeable future, the court shall order such person unconditionally released from further confinement. If the court does not so find, the court shall order such person returned to an appropriate facility under an appropriate treatment plan and conditions of confinement. The court may place the person in a less restrictive setting only if it finds that such placement is consistent with the safety of the public.

Prior to the hearing, on May 5, 1993, the Lincoln County Attorney, on behalf of the State, filed a motion for an independent evaluation of the defendant by expert witness Dr. Jack Anderson. The defendant filed an objection to the motion on the grounds that the evaluation was in violation of his right to due process; that it was in the form of a "second opinion," for which there is no authority under Neb. Rev. Stat. § 29-3701 et seq. (Reissue 1989); that the motion did not conform to the rules of civil procedure; that it did not set out good cause; and that it would cause delay and unduly burden the court. Following a hearing, the court granted the State's motion and

ordered LRC to allow Dr. Anderson, the Lincoln County Attorney, and the Lincoln County public defender access to examine all files pertaining to the matter.

At the annual review hearing, the court received the status report and treatment plan prepared by Dr. Louis C. Martin, chief of service of the security unit of LRC. The report stated that the defendant continues to be mentally ill and potentially dangerous and that his mental illness at this point consists of a diagnosis of "Axis I - A) Chronic Alcohol Abuse, and Dependence, severe; B) Pedophilia; C) Major Depression, resolved; Axis II - Antisocial Personality Disorder." However, Dr. Martin's report requested that the court consider increasing the amount of freedom allowed to the defendant, from code 2 status, which requires one-to-one supervision by a staff member, to code 3 status, which would allow him to be taken from the grounds of LRC in supervised groups for therapeutic purposes. These outings would include, among others, trips to the circus, basketball games, swimming at available facilities, and attending picnics or movies in the Lincoln community. Ordinarily, the groups would include three to four patients with two staff members.

The depositions of Drs. Martin and Anderson were also received. On advice of counsel, the defendant refused to be interviewed by Dr. Anderson. However, based on his previous contacts with the defendant and his review of LRC records, Dr. Anderson testified that his diagnosis of the defendant was "chronic undifferentiated schizophrenia" and that the defendant was still "a very fragile person and could experience psychotic episodes very easily."

Col. Ronald Tussing of the Nebraska State Patrol, Chief Allen Curtis of the Lincoln Police Department, and Sheriff Thomas Casady of the Lancaster County sheriff's office all testified in opposition to changing the defendant's status to code 3. They also testified in regard to concerns about LRC compliance with notification procedures which are required whenever the defendant leaves LRC grounds.

Following the hearing, the district court found that there was clear and convincing evidence that the defendant "is and continues to be mentally ill and is dangerous to others by reason

of his mental illness, and that he will continue to be dangerous in the foreseeable future as demonstrated by the overt acts of October 18, 1975." The court further found that the recommendation of LRC for a change of status to code 3 should be denied and that there was probable cause to believe that LRC had not complied with the previous court order. Pending further hearing, the court revoked the defendant's privilege to make outings from the grounds of LRC. The court ordered that the next review hearing would be held on June 1, 1994, and granted the State leave to obtain an independent psychiatric or psychological evaluation of the defendant prior to the next hearing; a reciprocal right was granted to the defendant at the State's expense.

Following the defendant's motion for a new trial, the court allowed both parties to withdraw their rests and to adduce additional evidence at a hearing on July 8, 1993, concerning the reinstatement of the defendant's status to a modified code 2. As a result of this hearing, the court again found clear and convincing evidence that the defendant is and continues to be mentally ill and dangerous to others. The court denied LRC's recommendation for a change of status to code 3, but further found that provisions could be made within code 2 status to allow therapeutic activity without jeopardizing security and public safety. The court's order includes a detailed protocol to be followed by LRC staff in arranging for the defendant's outings off LRC grounds.

The defendant appeals, asserting that the district court erred in (1) violating his right to due process by allowing the State's motion for independent evaluation; (2) considering evidence derived from the independent evaluation; (3) finding that there was clear and convincing evidence that he is mentally ill and dangerous; (4) finding that he will continue to be dangerous in the foreseeable future by reason of the overt acts of October 19, 1975; and (5) finding that the recommendation of LRC for a change of status should be denied.

The defendant first contends that the district court violated his right to due process when it ordered an independent evaluation without factual basis or statutory authority and erred in considering any evidence obtained through the

independent evaluation.

" 'It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.' " *Foucha v. Louisiana*, _____ U.S. _____, 112 S. Ct. 1780, 1785, 118 L. Ed. 2d 437 (1992).

" '[D]ue process is flexible and calls for such procedural protections as the particular situation demands.' " *Jones v. United States*, 463 U.S. 354, 367-68, 103 S. Ct. 3043, 77 L. Ed. 2d 694 (1983).

Due process in review hearings, pursuant to § 29-3703, is guaranteed under § 29-3704. The rights ensured by § 29-3703 include adherence by the court to the Nebraska Evidence Rules and the right of the appellant to confront and cross-examine adverse witnesses. *State v. Hayden*, 237 Neb. 286, 466 N.W.2d 66 (1991).

The defendant here does not contend that the court erred in failing to adhere to the Nebraska Evidence Rules or in denying him the right to confront and cross-examine adverse witnesses. However, citing *State v. Rhodes*, 191 Neb. 131, 214 N.W.2d 259 (1974), and *Ake v. Oklahoma*, 470 U.S. 68, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985), he apparently contends that if one objective examination is all that is constitutionally required to be provided to a defendant, one examination is all that should be *allowed* to the State.

In *Rhodes*, we found that where a state-employed psychiatrist was qualified to make an examination to determine an indigent defendant's competency to stand trial, the defendant was not entitled to a further examination by a psychiatrist of his own choice. However, we also stated that "[t]he question of competency to stand trial is one of fact to be determined by the court, and the means employed in resolving the question are discretionary with the court." 191 Neb. at 133, 214 N.W.2d at 262.

In *Ake*, the Supreme Court held that when a defendant demonstrates to the trial court that his sanity at the time of the offense is to be a significant factor at trial, the State must, *at a minimum*, assure that the defendant has access to a competent psychiatrist who will conduct an examination and assist in preparation of the defense. The Court went on to state:

> This is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own. Our concern is that the indigent defendant have access to a competent psychiatrist for the purpose we have discussed, and as in the case of the provision of counsel *we leave to the States the decision on how to implement this right.*

(Emphasis supplied.) 470 U.S. at 83.

Neither *Rhodes* nor *Ake* would preclude a district court from allowing the performance of an independent evaluation if, in its discretion, the court found this to be necessary. While there is no explicit provision for independent evaluation under § 29-3703, that section calls for an "evidentiary hearing" by the court which tried the acquittee. The means for determining the acquittee's sanity, as in determining a defendant's competency to stand trial, should be discretionary with the court.

In *Tulloch v. State,* 237 Neb. 138, 465 N.W.2d 448 (1991), the appellants argued that the acquitted persons statutes violated equal protection because they do not expressly provide for a free, independent evaluation for indigents, as does the civil commitment act. See Neb. Rev. Stat. § 83-1052 (Reissue 1987). Section 29-3701, addressing the initial commitment of an insanity acquittee, provides for evaluation and development of a treatment plan following the probable cause hearing required by that section. Under § 29-3701(6), an acquittee who desires a separate evaluation may file a motion with the court requesting an evaluation by one *or more* qualified experts of his or her choice. We noted in *Tulloch* that the statute does not guarantee a free, independent evaluation for indigents, but found it clear that "such an evaluation may be obtained upon the individual's motion." 237 Neb. at 142, 465 N.W.2d at 452.

Although the defendant argues that the State could obtain "opinion after opinion until they find the hired gun to say what they want," brief for appellant at 9, that contingency is not at issue in the instant case. Here, the district court granted the State's motion for one independent evaluation, while noting that over the past several years a reciprocal right had been granted to both the State and the defendant to obtain private evaluation if either party was dissatisfied with the evaluation by

the Department of Public Institutions. The district court did not abuse its discretion in granting the State's motion for one independent evaluation, while allowing the defendant to secure his own independent evaluation if he so desired.

In *Tulloch*, we interpreted § 29-3703 to mean that the burden is on the State to prove by clear and convincing evidence that the insanity acquittee remains dangerous. The defendant apparently suggests that the State should be satisfied with, if not bound by, LRC's diagnosis and report. However, § 29-3703 provides that the court may review the records *and* conduct an evidentiary hearing. The State should be allowed to submit additional evidence since the court, as trier of fact, is not required to take the opinion of an expert as binding. See *State v. Hayden*, 233 Neb. 211, 444 N.W.2d 317 (1989). The record reflects that during the course of the defendant's commitment to LRC he has been under the care of several different psychiatrists, who have rendered diverse diagnoses. As stated in *Ake v. Oklahoma*, 470 U.S. 68, 81, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985): "Psychiatry is not . . . an exact science, and psychiatrists disagree widely and frequently on what constitutes mental illness, on the appropriate diagnosis to be attached to given behavior and symptoms, on cure and treatment, and on likelihood of future dangerousness." If necessary, the factfinder must resolve differences in opinion within the psychiatric profession on the basis of all the evidence offered by each party. See *id*.

The defendant was present at the review hearing held on May 27, 1993, but not at the May 10 hearing on the State's motion for independent evaluation, and asserts that he did not receive notice of that hearing. The record reflects that defendant's counsel was notified and present at the hearing, but that counsel had been unable to contact the defendant. However, the record further reflects that the defendant was present at a June 1992 review hearing, at which time the court set the 1993 review hearing for May 27 and ordered that "the State is granted leave to obtain an independent psychiatric or psychological evaluation of the defendant prior to the next annual review hearing. A reciprocal right is given to the defendant at the State's expense." There is nothing in the record to indicate that

the order was appealed. Thus, the defendant apparently had almost 1 year's notice of the fact that an independent evaluation was to be performed. However, even if there was any error in the manner of notice, it did not prejudice the defendant, since he refused to submit to an interview with Dr. Anderson.

Although the defendant further contends that he has not put his mental health at issue, since he has fully cooperated with the treatment plan of LRC, that position is untenable. The defendant's mental health *is* the issue; he put his sanity at issue by pleading not guilty by reason of insanity at trial, and there is clear statutory authority to evaluate his mental health unless and until he is found no longer to be mentally ill and dangerous.

Citing *Estelle v. Smith*, 451 U.S. 454, 101 S. Ct. 1866, 68 L. Ed. 2d 359 (1981), the defendant argues that allowing an independent evaluation violates his Fifth Amendment right not to be compelled to give testimony against himself. In *Estelle*, a doctor who had conducted a pretrial competency examination was allowed to testify for the State at the defendant's sentencing hearing, although the defendant had not introduced any psychiatric evidence. The Supreme Court held that where the defendant had not been warned that he had the right to remain silent and that his statements could be used against him at the sentencing proceeding, the admission of the psychiatrist's damaging testimony on the crucial issue of future dangerousness violated his Fifth Amendment privilege against compelled self-incrimination.

In the instant case, the defendant relied on psychiatric testimony to establish his insanity at the time of trial. Although he asserts that the Supreme Court has found that a defendant cannot be compelled to give testimony against himself to enhance a criminal punishment, here punishment is not at issue. An insanity acquittee is held " 'pursuant to *civil commitment* growing out of a criminal action . . . .' " *Tulloch v. State*, 237 Neb. 138, 143, 465 N.W.2d 448, 452 (1991). "The purpose of the acquitted persons statutes is 'to protect the public from mentally ill dangerous persons who have demonstrated their dangerous proclivities by committing criminal acts for which they are not punished because of insanity. . . .' " *Id*. at 144, 465 N.W.2d at 453, quoting *State v. Simants*, 213 Neb. 638, 330

N.W.2d 910 (1983). See, also, *Jones v. United States*, 463 U.S. 354, 103 S. Ct. 3043, 77 L. Ed. 2d 694 (1983) (the purpose of commitment following an insanity acquittal is to treat the individual's mental illness and protect him and society from his potential dangerousness; as insanity acquittee is not convicted, he may not be punished); *People v. Beard*, 173 Cal. App. 3d 1113, 219 Cal. Rptr. 225 (1985) (court-ordered psychiatric examinations of patient originally committed after being found not guilty by reason of insanity did not violate patient's privilege against self-incrimination where, prior to interviews, patient was informed of nature of interview and that he need not respond to questions which he found objectionable, patient exercised that option, and there was no indication in the record that any of the questions sought to elicit information that could even remotely subject the patient to criminal prosecution); *Sheridan, petitioner*, 412 Mass. 599, 591 N.E.2d 193 (1992) (petitioner's state and federal rights against self-incrimination are not implicated by patient's compelled appearance at examination held pursuant to statutory scheme upon his petition for discharge from commitment as sexually dangerous person; such proceedings are not criminal prosecutions and nothing which patient reveals during court-ordered examinations may be used against him in a criminal proceeding; mere appearance before another is not communicative or testimonial in nature and neither state nor federal constitutional right against self-incrimination prevents a third party from simply observing a person); *Heflin v. State*, 640 S.W.2d 58 (Tex. Crim. App. 1982) (by pleading and attempting to prove his insanity through the introduction of the testimony of expert psychological witnesses who had observed, interviewed, and tested him with his cooperation, appellant waived his Fifth Amendment privilege against self-incrimination).

Finally, the defendant contends that the court erred in finding that there was clear and convincing evidence that he is still mentally ill and dangerous and in finding that his status should not be changed to code 3. He argues that even if Dr. Anderson's testimony is considered, the evidence does not meet the standard of clear and convincing proof.

Dr. Anderson had interviewed the defendant and testified as a defense witness at his first trial in January 1976, stating that he diagnosed the defendant as schizophrenic. Although the defendant refused to be interviewed in 1993, Dr. Anderson testified by deposition at the review hearing that his opinions at that time were based on his personal experience with the defendant, his own knowledge and training in psychiatry, and a review of the defendant's history and records. See § 29-3706 (all records in the original proceeding or review hearings shall be made a part of the official record in the underlying case). Dr. Anderson's deposition testimony indicates a 1993 diagnosis of "chronic undifferentiated schizophrenia in remission." Dr. Anderson stated that symptoms of schizophrenia in remission are reflected in references in LRC records to the defendant's "flatness of affect." In describing that symptom, Dr. Anderson stated:

Mr. Simants shows emotion. It is just that in contrast to people who are not schizophrenic and who have no psychiatric illness his affectual responses are relatively flattened. He does not have that — he does not have effectual [sic] or emotional responses. And I doubt if that would be changed by any therapy.

Dr. Anderson further testified that one of the factors keeping the defendant's schizophrenia in remission was the constant reality feedback that he gets, and that without the reality feedback, he would probably start having hallucinatory experiences again. Dr. Anderson stated: "I am sincerely convinced that this man is a very present danger in his current condition despite his lack of symptomatology in the structured setting and any loosening or relaxation of his supervision I think should be preceded by a very good investigation of his sexual conflict."

Dr. Martin, chief of service of the security unit of LRC, testified that he had been the defendant's attending physician for approximately 6 months and had "probably half a dozen" individual sessions with him. Dr. Martin did not diagnose schizophrenia in the defendant, but he did find the defendant to be mentally ill and potentially dangerous, and he diagnosed pedophilia; alcoholism and other substance abuse; major

depression, resolved; and antisocial personality disorder. Dr. Martin stated the opinion that the defendant was suffering from pedophilia at the time of the commission of his crime and agreed that pedophilia is not something that "comes and goes." Dr. Martin noted that when the defendant was examined on admission to the hospital, he was in denial about sexual preoccupation with children. However, in speaking with Dr. Martin, the defendant had indicated his recollection that over several months prior to the crime, he had been fantasizing about sexual activity with children. Dr. Martin stated that the defendant had made a great deal of progress in that area, so that he would say that "inside the *highly structured environment of the hospital, which is a very highly controlled environment*, to be sure, that it's not a symptomatic disorder." (Emphasis supplied.)

Although Drs. Anderson and Martin rendered different diagnoses, both indicated that the defendant continues to be mentally ill and that the highly controlled and structured setting of LRC was significant to the lack of symptomatology. Thus, while we find that the district court did not err in allowing an independent evaluation, even if Dr. Anderson's testimony was not considered, there is sufficient evidence in the record to support the district court's findings.

The district court found that the defendant would continue to be dangerous in the foreseeable future as demonstrated by the overt acts of October 19, 1975. We stated in *State v. Hayden*, 233 Neb. 211, 221, 444 N.W.2d 317, 324 (1989), that " '[i]n order for a past act to have any evidentiary value it must form some foundation for a prediction of future dangerousness and be therefore probative of that issue.' "

Here, the district court received testimony in regard to the defendant's status and took judicial notice of the bill of exceptions of the defendant's first trial, presentence investigation reports, mental health examinations, and other exhibits. These records indicate that the use of alcohol was a factor in the crime which occurred in 1975 and that one or more of the children who were murdered were also sexually assaulted. As noted above, the defendant's current diagnosis includes alcohol abuse and pedophilia. Thus, the overt acts of

1975 are sufficiently correlative of the current diagnosis to be predictive of future dangerousness. Although Dr. Martin's report suggests that the defendant's treatment should be "somewhat less restrictive," it further states that "[t]he Security Unit of the Lincoln Regional Center continues to remain the least restrictive treatment setting consistent with his treatment needs and the safety of the public."

The court also received testimony in regard to the record of escapes from LRC and public safety concerns arising from notification issues. In its order, the court recognized the therapeutic value of outings from LRC while balancing public safety concerns in ordering a modified code 2 status which allows the defendant to leave LRC grounds once each week for therapeutic activities, with one-to-one supervision.

There is no error in the judgment of the district court, and it is affirmed.

AFFIRMED.