LABEL CONCEPTS, APPELLANT AND CROSS–APPELLEE, V.
WESTENDORF PLASTICS, INC., DOING BUSINESS AS ASC
WHIRLPOOL, APPELLEE AND CROSS–APPELLANT.
528 N.W.2d 335

Filed March 10, 1995.   No. S–93–594.

Patricia McCormack and Robert E. O'Connor, Jr., of O'Connor & Associates, for appellant.

Dennis E. Martin and Thomas R. Ostdiek, of Martin & Martin, P.C., for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ.

CAPORALE, J.

## I. STATEMENT OF CASE

In this action at law brought under the provisions of the sales article of the Uniform Commercial Code, Neb. U.C.C. §§ 2-101 through 2-616 (Reissue 1992), the plaintiff–appellant, Label Concepts, seeks to recover $11,550.42 plus prejudgment interest for goods sold under oral orders to the defendant–appellee, Westendorf Plastics, Inc., doing business as ASC Whirlpool. Westendorf asserts that because the goods were "unfit," it is not indebted to Label Concepts, and further pleads a setoff and separate counterclaim. Following a bench trial, the district court entered "judgment for [Label Concepts] in the sum of $3680.32." Label Concepts appeals, averring that the district court erred in (1) determining the damages due it and (2) refusing to award prejudgment interest. Westendorf cross–appeals, declaring that the district court erred in (1) admitting certain evidence and (2) failing "to further set-off" a $2,500 credit it had negotiated. We affirm.

## II. NATURE OF DISTRICT COURT'S RULING

Because the judgment entered in this case is silent as to the adjudication of Westendorf's setoff and counterclaim, our first

task is to determine what exactly the district court ruled. While in the absence of an ambiguity the effect of a judgment must be declared in light of the literal meaning of the language used, see *Metropolitan Life Ins. Co. v. Beaty*, 242 Neb. 169, 493 N.W.2d 627 (1993), if the language is ambiguous, there is room for construction, *Bokelman v. Bokelman*, 202 Neb. 17, 272 N.W.2d 916 (1979). In ascertaining the meaning of an ambiguous judgment, resort may be had to the entire record. See, *Whaley v. Matthews*, 136 Neb. 767, 287 N.W. 205 (1939); *Burke v. Unique Printing Co.*, 63 Neb. 264, 88 N.W. 488 (1901). Moreover, there is authority, which we adopt, for the proposition that silence in a judgment with respect to any demand which was an issue in the case under the pleadings constitutes an absolute rejection of the demand. *Sun Finance Co., Inc. v. Jackson*, 525 So. 2d 532 (La. 1988).

Given the foregoing rules and the record with which we are presented, as summarized in part IV below, the effect of the district court's judgment is the same as if the court had carefully detailed that it found for Label Concepts on its petition, entered judgment thereon in the sum of $3,680.32, further found for Label Concepts on Westendorf's setoff and counterclaim, and dismissed said setoff and counterclaim.

### III. SCOPE OF REVIEW

Having deciphered the district court's judgment, we proceed to determine whether it is legally correct. In conducting that inquiry, we are controlled by the rule that a trial court's factual determinations in a bench trial in an action at law have the same effect as a jury verdict and will not be set aside unless clearly wrong. *Imperial Empire Trading Co. v. City of Omaha*, 246 Neb. 919, 524 N.W.2d 314 (1994).

### IV. FACTS

Label Concepts is a manufacturer's representative and distributor which acquires custom-printed labels and in turn sells them to its customers. In 1991, Westendorf placed with Label Concepts a number of oral orders for a variety of labels, some of which were to be affixed to small refrigerators with rounded fronts, such as to make the refrigerators resemble beverage containers.

Initially, a total of eight invoices were at issue; however, Westendorf did not dispute that it owes an unpaid balance of $3,680.32 to Label Concepts on five of these invoices.

The first of the three disputed invoices concerns labels resembling the "Labatt's Lite" container, which order is also in part covered by some of the five undisputed invoices mentioned earlier. In any event, the first time the Labatt's Lite labels were printed by Label Concepts' producer, the colors overlapped, so the labels were reprinted. The reprinted labels turned out to be too short in length. Although Label Concepts claimed its inspection of the reprinted labels proved them to have been in compliance with the specifications supplied by Westendorf, Label Concepts nonetheless had strips produced to Westendorf's specifications, which extended the length of the reprinted labels. This action proved to be a satisfactory solution.

The remaining two disputed invoices concern labels resembling the "Blue Light" container. There was testimony that the first time these labels were printed the colors overlapped. As a result, they were printed a second time, but the second batch of labels stuck together because they had not had time to cure before being stacked. They were then printed a third time. The third batch of labels was ultimately delivered to Westendorf and applied to the refrigerators which were then shipped to Westendorf's Canadian purchaser. The purchaser, however, noticed the colors were wrong and objected to the labels.

Label Concepts claims that the color used was Westendorf's mistake because the labels had been produced in compliance with the colors shown on an artboard submitted by Westendorf to Label Concepts and further that the colors on the labels were identical to those shown on the artboard. Westendorf claims that Label Concepts wrongly referred to the Labatt's Lite artboard and that therefore the colors for the Blue Light order were wrong. The Blue Light artboard was not in evidence.

Westendorf testified that Label Concepts agreed to reprint the labels once again without extra charge and to give Westendorf a credit of $2,500 to compensate Westendorf for having to deal with remedying the problem.

On the other hand, Label Concepts testified it agreed to again

reprint the labels and give Westendorf a credit of $2,500 on this fourth reprint, meaning that Westendorf still owed the money for the third batch, but that if they were redone a fourth time, Westendorf would get the credit.

When, after about 2 weeks, Westendorf had not received any new Blue Light labels, it canceled its order with Label Concepts and ordered replacements from another supplier and applied these to the refrigerators.

## V. ANALYSIS OF LABEL CONCEPTS' APPEAL

With that background, we turn our attention to Label Concepts' assignments of error, the district court's determination as to the amount due and its failure to award prejudgment interest.

### 1. AMOUNT DUE

Westendorf argues that the evidence shows that the labels were not merchantable within the meaning of § 2–314 in that they did not "pass without objection in the trade under the contract description." Section 2–314 reads in relevant part:

> (1) Unless excluded or modified (section 2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . .
>
> (2) Goods to be merchantable must be at least such as
>
> (a) pass without objection in the trade under the contract description . . . .

In the instant case, there is no question that Label Concepts was a merchant and no evidence that Label Concepts disclaimed any warranties pursuant to § 2–316; thus, the question is whether the labels which were the subject of the disputed invoices were merchantable. See *Nerud v. Haybuster Mfg.*, 215 Neb. 604, 340 N.W.2d 369 (1983), *overruled on other grounds, Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 412 N.W.2d 56 (1987). For the purpose of this analysis, we assume, without deciding, that the labels were accepted by Westendorf, as the term "acceptance" is defined in § 2–606. Thus, the burden of proof was on Westendorf as the buyer to establish the breach of warranty. See, *Laird v. Scribner Coop*, 237 Neb. 532, 466 N.W.2d 798 (1991); § 2–607(4).

Whatever else might be said about the Labatt's Lite labels, there is no question that the labels were too short and that the first of the three disputed invoices covers the extension strips produced to make the Labatt's Lite labels usable. While there was testimony from Label Concepts that the Labatt's Lite labels as reprinted met the specifications Westendorf provided, the district court was free to accept the countervailing testimony. The controlling rule is that in reviewing a trial court's factual determinations in a bench trial in an action at law, an appellate court does not reweigh the evidence, but considers it in the light most favorable to the successful party and resolves evidentiary conflicts in favor of that party, who is entitled to every reasonable inference deducible from the evidence. *Lone Cedar Ranches v. Jandebeur*, 246 Neb. 769, 523 N.W.2d 364 (1994).

That brings us to the subject of the remaining two disputed invoices, which cover the Blue Light labels. In that regard, Westendorf points to testimony that its Canadian purchaser declared the labels to be defective and unacceptable.

Citing *Mennonite Deaconess Home & Hosp. v. Gates Eng'g Co.*, 219 Neb. 303, 363 N.W.2d 155 (1985), for the proposition that there must be proof of a deviation from the standard of merchantability causing the injury, Label Concepts responds that the fact that the labels obviously passed through Westendorf's operation without objection indicates they were not defective.

However, the fact that Westendorf did not notice the defect does not counter the proof that Westendorf's Canadian purchaser refused to accept the refrigerators on which those labels had been affixed.

The district court could well have found that the colors Label Concepts matched were those meant for the Labatt's Lite label, thus making the colors wrong for the Blue Light label.

Accordingly, there is no merit to Label Concepts' first assignment of error.

## 2. PREJUDGMENT INTEREST

The short answer to Label Concepts' claim that the district court erred by not awarding prejudgment interest is that although it assigns the failure as error, the matter is not argued

in its brief. The applicable rule is that in the absence of plain error, an appellate court will not address issues that are not both assigned and analyzed in the brief of the party asserting the error. See, *Manske v. Manske*, 246 Neb. 314, 518 N.W.2d 144 (1994); *Ashby v. First Data Resources*, 242 Neb. 529, 497 N.W.2d 330 (1993); Neb. Ct. R. of Prac. 9D(1)d (rev. 1992).

Moreover, there is no showing of record that Label Concepts complied with the provisions of Neb. Rev. Stat. § 45-103.02 (Reissue 1993), a condition precedent to the recovery of prejudgment interest in actions accruing after January 1, 1987. *Schlake v. Jacobsen*, 246 Neb. 921, 524 N.W.2d 316 (1994).

Consequently, neither is there any merit to Label Concepts' second assignment of error.

## VI. ANALYSIS OF WESTENDORF'S CROSS-APPEAL

We thus reach the cross-appeal, in which Westendorf asserts the district court erroneously admitted certain evidence and denied Westendorf the $2,500 credit it had negotiated.

### 1. EVIDENCE

Claiming that the matter of the credit had been reduced to a written agreement, Westendorf asserts the district court erred in overruling its parol evidence objection to testimony concerning Label Concepts' understanding of the agreement in that regard. It is true that a contract written in clear and unambiguous language is not subject to interpretation or construction; rather, the intent of the parties must be determined from the contents of the contract, and the contract must be enforced according to its terms. *Rains v. Becton, Dickinson & Co.*, 246 Neb. 746, 523 N.W.2d 506 (1994). Thus, a written instrument is open to explanation by parol evidence when its terms are susceptible to two constructions or where the language employed is vague or ambiguous. *Coppi v. West Am. Ins. Co., ante* p. 1, 524 N.W.2d 804 (1994).

Here the written instrument on which Westendorf relies as the contract controlling the credit is far from being clear and unambiguous; indeed, it can best be described as a model of ambiguity. It is a purchase order directed to Label Concepts which, among other things, lists the quantity, description, and prices of a variety of labels and shows a total from which is

subtracted the sum of $2,500. However, not only is the $2,500 figure crossed out, but there is a line drawn from the figure to the word "error." Such a document means nothing with respect to the claimed credit.

Westendorf's first assignment of error thus fails.

## 2. DENIAL OF CREDIT

The foregoing resolution of Westendorf's first assignment of error dooms as well its claim that the district court erroneously denied it the credit sought in its setoff and counterclaim. As detailed in part IV, there was evidence from which the district court could reasonably conclude that the credit was to be given only if Label Concepts again produced the Blue Light labels. The evidence that it did not do so is uncontradicted.

## VII. JUDGMENT

Being correct, the judgment of the district court, as noted in part I, is affirmed.

AFFIRMED.