RADEC CONSTRUCTION, INC., A NEBRASKA CORPORATION, APPELLEE, V. SCHOOL DISTRICT NO. 17 OF DOUGLAS COUNTY, NEBRASKA, APPELLANT.

535 N.W.2d 408

Filed July 7, 1995. No. S-93-796.

Malcolm D. Young and Jeff C. Miller, of Young & White, for appellant.

William T. Ginsburg for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ.

CONNOLLY, J.

RaDec Construction, Inc. (RaDec), filed an action against School District No. 17 of Douglas County, Nebraska (Millard), for the balance due under a contract to build a new school. RaDec claimed that Millard failed to pay the proper amount for the earthwork performed by RaDec and its subcontractors. The district court ruled in favor of RaDec and issued a judgment against Millard in the amount of $80,269. Millard appealed. For the reasons stated herein, we affirm the judgment of the district court.

## BACKGROUND

RaDec was named the general contractor for the construction of the school on a bid of $5,275,800, of which $404,269 was allocated for earthwork. The project initially required grading and excavation of the site, including hauling in an additional 100,000 cubic yards of fill dirt.

The parties entered into a contract which included a "General

Conditions of the Contract for Construction" form contract drafted by the American Institute of Architects. The form contract contained the following provision, which governed changes in the project after the formation of the contract, if mutual acceptance was not possible:

> **12.1.4** . . . [T]he Contractor, provided he receives a written order signed by the Owner, shall promptly proceed with the Work involved. The cost of such Work shall then be determined by the Architect on the basis of the reasonable expenditures and savings of those performing the Work attributable to the change, including, in the case of an increase in the Contract Sum, a reasonable allowance for overhead and profit. In such case . . . the Contractor shall keep and present, in such form as the Architect may prescribe, an itemized accounting together with appropriate supporting data for inclusion in a Change Order. Unless otherwise provided in the Contract Documents, cost shall be limited to the following: cost of materials, including sales tax and cost of delivery; cost of labor, including social security, old age and unemployment insurance, and fringe benefits required by agreement or custom; workers' or workmen's compensation insurance; bond premiums; rental value of equipment and machinery; and the additional costs of supervision and field office personnel directly attributable to the change. Pending final determination of cost to the Owner, payments on account shall be made on the Architect's Certificate for Payment. The amount of credit to be allowed by the Contractor to the Owner for any deletion or change which results in a net decrease in the Contract Sum will be the amount of the actual net cost as confirmed by the Architect. When both additions and credits covering related Work or substitutions are involved in any one change, the allowance for overhead and profit shall be figured on the basis of the net increase, if any, with respect to that change.

After formation of the contract, Wilscam, Mullins, Birge, Inc. (Wilscam), the architecture firm which designed the school, revised the earthworking plan so that no fill dirt would be needed at the site. Wilscam asked RaDec to submit an

itemized quotation of costs without the fill dirt. RaDec made a similar request of its subcontractor, Wiekhorst Brothers Excavation (Wiekhorst). Wiekhorst submitted proposed reductions in the amount of its subcontract first by $30,100, then by $80,000. Wilscam rejected both offers as being unfair to Millard.

Since the parties could not reach a mutual acceptance regarding costs, Millard informed RaDec that it would invoke § 12.1.4, giving Wilscam the power to reasonably determine how much credit Millard should receive after the contract was altered to eliminate fill dirt. At a meeting attended by representatives of Millard, RaDec, Wiekhorst, Wilscam, and Negus–Sweenie, Inc. (the grading subcontractor), a representative from Negus–Sweenie proposed that the cost of the earthwork without the fill dirt would be $203,500.

Two months after that meeting, a second meeting was held to determine the amount of credit due Millard and was attended only by representatives of Millard and Wilscam. Wilscam issued a change order deducting $189,018 from the contract due to the simplified earthworking plan. Notes from the second meeting showed that Wilscam arrived at the $189,018 deduction by subtracting $407,888 (the amount due RaDec for earthwork according to payment schedules) from the contract total and adding in its place the amount proposed by Negus–Sweenie for the earthwork ($203,500) plus profit of $7^{1}/_{2}$ percent. Although the figures employed by Wilscam exactly corresponded with the figures supplied by Negus–Sweenie, a representative of Wilscam testified that other figures were considered.

RaDec objected to Wilscam's determination, claiming that Wilscam had no authority to determine the costs of the earthwork "from the bottom up," but should have determined the probable costs to RaDec from the time of the change order so as to reflect those costs already incurred. RaDec refused to sign the change order, but finished the project. During the course of the construction, RaDec fired Wiekhorst as the earthwork subcontractor and hired Negus–Sweenie to finish the job. Wiekhorst filed suit against RaDec's bonding company and accepted a $75,000 payment in settlement of that suit. The evidence reflected that the settlement amount constituted

payment in consideration for work completed by Wiekhorst.

In February 1991, RaDec filed suit against Millard seeking additional payment for the earthwork. RaDec alleged that Millard paid $248,138 for the earthwork but that RaDec incurred $332,492.45 in expenses for the same work.

After a bench trial, based on the testimony of a former officer of RaDec, the district court found in favor of RaDec and awarded RaDec $80,269. In a letter to counsel, the district court stated, "I conclude that the only logical . . . way to determine any adjustment in the contract price would be to determine the cost of trucking in the dirt, determining the cost of using on–site dirt, and the difference would constitute the reduction . . . in the total contract price." The district court found Wilscam's revision of the entire earthwork portion of the contract to be arbitrary and a gross mistake. Millard appealed.

### ASSIGNMENTS OF ERROR

Millard argues that the district court erred in (1) applying the incorrect standard for reviewing Wilscam's decision, (2) finding that the evidence satisfied the standard applied by the district court, and (3) finding that the evidence supported the award.

### STANDARD OF REVIEW

In a law action tried to the court, the findings of the court will not be disturbed on appeal unless clearly wrong. *VRT, Inc. v. Dutton–Lainson Co.*, 247 Neb. 845, 530 N.W.2d 619 (1995).

### ANALYSIS

In a letter to counsel for both parties accompanying its order in the case at bar, the district court stated that Wilscam's method of determining the amount of credit due Millard was arbitrary and a gross mistake. Millard contends that the district court applied an incorrect standard and should have applied a stricter standard. Specifically, Millard argues that before the district court could invalidate Wilscam's determination, it had to find that the determination was based on fraud, gross mistake as necessarily implies bad faith, or failure to exercise an honest judgment. We agree.

In *In re Appeal Roadmix Construction Corporation*, 143 Neb. 425, 435, 9 N.W.2d 741, 746 (1943), this court stated the following rule:

Generally, the courts have held that parties to a contract may agree that classification, quantity, and quality of work done or things furnished shall be left to the judgment of a third person and his estimate or decision shall be final . . . : "It may be observed generally that, under the federal and state authorities, it is competent for parties, in this class of general construction work, to designate in the contract some person or official to pass upon and decide all disputed questions that may arise in the course of construction, and that his decision shall be final." . . . [T]he decision of one so authorized is binding upon the parties thereto except when it is based upon fraud, gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment.

Pursuant to *In re Appeal Roadmix Construction Corporation*, Millard is correct in arguing that the district court could not invalidate Wilscam's decision in the absence of fraud, gross mistake as would necessarily imply bad faith, or failure to exercise an honest judgment. However, we also note that in cases where it appears that there was no reasonable basis for the third party's action, or if it is patently erroneous, the courts have found the equivalent of bad faith, and the contractor is not bound by the third party's decision. See *Savin Bros., Inc. v. State*, 62 A.D.2d 511, 405 N.Y.S.2d 516 (1978), *aff'd* 47 N.Y.2d 934, 393 N.E.2d 1041, 419 N.Y.S.2d 969 (1979). Therefore, if the district court could have determined that Wilscam's determination had no reasonable basis or that it was patently erroneous, then the district court could correctly have found Wilscam's decision to constitute a gross mistake as would necessarily imply bad faith.

Having established the proper standard of review for the district court, we now turn to the district court's decision. The district court found that Wilscam erroneously determined the new contract price reflecting the lack of need for fill dirt "from the bottom up." Evidence presented to the district court indicated that Wilscam figured the cost of the earthwork without fill dirt by using figures supplied by Negus–Sweenie, without attempting to verify whether those figures bore a reasonable relationship to actual costs. The district court found that RaDec

had presented Wilscam with an accounting which accurately reflected the change in costs resulting from the elimination of fill dirt from the contract, but that Wilscam never utilized those figures.

In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless they are clearly wrong. *First Westside Bank v. For-Med, Inc.*, 247 Neb. 641, 529 N.W.2d 66 (1995); *Label Concepts v. Westendorf Plastics*, 247 Neb. 560, 528 N.W.2d 335 (1995); *Production Credit Assn. v. Eldin Haussermann Farms*, 247 Neb. 538, 529 N.W.2d 26 (1995). In reviewing a judgment awarded in a bench trial, the appellate court does not reweigh the evidence but considers the judgment in a light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Unland v. City of Lincoln*, 247 Neb. 837, 530 N.W.2d 624 (1995); *Label Concepts v. Westendorf Plastics, supra*; *Lone Cedar Ranches v. Jandebeur*, 246 Neb. 769, 523 N.W.2d 364 (1994).

We determine that the district court was not clearly wrong in concluding that Wilscam's determination of the reduction in contract price constituted a gross mistake. Furthermore, we hold that Wilscam's determination was patently erroneous and therefore legally equivalent to bad faith for the purposes of deciding the instant case.

AFFIRMED.