STATE OF NEBRASKA, APPELLEE, V. ERWIN CHARLES SIMANTS, APPELLANT.

537 N.W.2d 346

Filed September 22, 1995.   No. S-94-943.

Robert P. Lindemeier, Lincoln County Public Defender, for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CONNOLLY, J.

Erwin Charles Simants appeals from an order entered by the district court for Lincoln County following the 1994 annual review of his commitment to the Lincoln Regional Center (LRC). At the hearing, appellant sought release from the LRC or, in the alternative, to have his status at the LRC upgraded to include less restrictive monitoring. The district court found there was clear and convincing proof appellant remained both mentally ill and dangerous to others by reason of his mental illness. The district court further found that appellant's status at the LRC should not be upgraded due to public safety concerns. Finding the district court's determinations were not clearly erroneous, we affirm.

## FACTUAL BACKGROUND

On January 17, 1976, appellant was convicted on six counts of first degree murder for the October 18, 1975, deaths of a Sutherland, Nebraska, family and was sentenced to death. This court affirmed those convictions and sentences. *State v. Simants*, 197 Neb. 549, 250 N.W.2d 881 (1977). Appellant's convictions were subsequently vacated, and the cause was remanded for retrial due to irregularities and misconduct in connection with the sequestration and deliberations of the jury during the original trial. *Simants v. State*, 202 Neb. 828, 277 N.W.2d 217 (1979). After his second trial, appellant was found not guilty by reason of insanity. He was civilly committed by the Lincoln County Mental Health Board and was admitted to the LRC on October 29, 1979.

On August 23, 1994, the district court for Lincoln County conducted an annual review hearing on appellant's status, pursuant to Neb. Rev. Stat. § 29-3703 (Cum. Supp. 1994), which provides in pertinent part:

(1) The court which tried a person who is found not responsible by reason of insanity shall annually . . . review the records of such person and conduct an evidentiary hearing on the status of the person. . . .

(2) If as a result of such hearing the court finds that such person is no longer dangerous to himself, herself, or others by reason of mental illness or defect and will not be so dangerous in the foreseeable future, the court shall order such person unconditionally released from court–ordered treatment. If the court does not so find, the court shall order that such person participate in an appropriate treatment program specifying conditions of liberty and monitoring consistent with the treatment needs of the person and the safety of the public. The treatment program may involve any public or private facility or program which offers treatment for mental illness and may include an inpatient, residential, day, or outpatient setting. The court shall place the person in the least restrictive available treatment program that is consistent with the treatment needs of the person and the safety of the public.

At the hearing, the State introduced the following evidence: (1) three exhibits of prior Lincoln County proceedings involving appellant; (2) the testimony of Nebraska State Patrol Superintendent Ronald Tussing, Lancaster County Attorney Gary Lacey, and Lincoln Police Chief Tom Casady; (3) the testimony of the LRC's medical records manager; (4) the deposition testimony of expert witness Dr. Jack Anderson; (5) a "1994 Annual Report to Lincoln County District Court on Erwin Charles Simants" prepared by Dr. Louis Martin; and (6) a report containing the LRC's records and statistics on recent escapes from the LRC.

Appellant introduced the following evidence: (1) the testimony of two expert witnesses, Dr. Beverly Mead and Dr. Martin; (2) the testimony of four employees of the LRC; and (3) a "Report of Psychiatric Clinical Interview with Erwin 'Herb' C. Simants" prepared by Dr. Mead.

In its order, the district court stated that it found clear and convincing evidence that appellant is and continues to be mentally ill and dangerous to others by reason of his mental

illness and will continue to be dangerous in the foreseeable future, as demonstrated by the overt acts of October 18, 1975. As a result, the district court ordered appellant to remain in the care and custody of the LRC. The court further found that appellant's request to have his status at the LRC upgraded should be denied due to public safety concerns.

## ASSIGNMENTS OF ERROR

Appellant assigns four errors: (1) that the district court violated the appellant's right to confrontation as guaranteed by the Sixth Amendment to the U.S. Constitution and article I, § 11, of the Nebraska Constitution when it allowed the State to introduce evidence of previous Lincoln County proceedings involving appellant; (2) that the district court erred in permitting three members of local law enforcement to testify regarding public safety concerns in connection with a proposed upgrade in appellant's status at the LRC, in violation of the rules of evidence and appellant's rights to due process and treatment; (3) that the State did not prove by clear and convincing evidence that appellant was mentally ill and dangerous; and (4) that the district court violated appellant's "right to treatment" by not ordering the LRC to administer a specific treatment plan.

## STANDARD OF REVIEW

The trial court's findings have the effect of a verdict and will not be set aside unless clearly erroneous. *RaDec Constr. v. School Dist. No. 17, ante* p. 338, 535 N.W.2d 408 (1995); *State v. Masters*, 246 Neb. 1018, 524 N.W.2d 342 (1994). An appellate court will not interfere on appeal with a final order made by the district court in a mental health commitment proceeding unless the court can say as a matter of law that the order is not supported by clear and convincing proof. *State v. Simants*, 245 Neb. 925, 517 N.W.2d 361 (1994); *State v. Hayden*, 233 Neb. 211, 444 N.W.2d 317 (1989) (*Hayden I*).

## ANALYSIS

### State's Exhibits 1 to 3

Appellant first contends that the district court's admission of State's exhibits 1 to 3 into evidence violated his Sixth

Amendment right to confrontation and cross-examination. At an annual review hearing, after an individual has been found not responsible by reason of insanity, that individual is guaranteed a full panoply of constitutional rights. *State v. Hayden*, 237 Neb. 286, 466 N.W.2d 66 (1991) (*Hayden II*); *Tulloch v. State*, 237 Neb. 138, 465 N.W.2d 448 (1991). The right to confront and cross-examine adverse witnesses falls within that panoply of constitutional rights. *Hayden II, supra.*

The district court took judicial notice of State's exhibits 1 to 3 and admitted them into evidence over the relevance, hearsay, foundation, and right of confrontation objections of appellant's counsel. Exhibit 1 contains court transcripts from appellant's first trial and from his prior annual review hearings, as well as a list of exhibits that were offered into evidence in those proceedings. Exhibit 2 contains information about appellant's 1993 annual review hearing, including depositions, records from other hearings, autopsy reports, investigative reports, presentence investigation reports, and information about his outings from the LRC. Exhibit 3 contains the bill of exceptions from appellant's first trial and various investigative reports. These records indicate that the use of alcohol was a factor in the crimes and that one or more of the children who were murdered were also sexually assaulted.

Neb. Evid. R. 703 states that

[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

After interpreting evidence rule 703 in *Hayden II*, this court held that "[a]t an annual review hearing pursuant to § 29-3703 . . . the court may receive records for the purpose of providing the basis for expert witnesses' opinions." 237 Neb. at 293, 466 N.W.2d at 70. In *Hayden II*, we found it error for the district court to admit the State's exhibits into evidence because they were submitted to prove the truth of the matter asserted therein and not for the purpose of explaining any expert's direct

testimony. However, *Hayden II* and the present case are distinguishable. In *Hayden II*, the State relied exclusively on the exhibits as proof of the issue before the court, without testimony except on rebuttal. Because the State provided no witness to lay foundation and no witness whom the appellant could confront and cross-examine, the appellant was denied due process.

In the instant case, the State's exhibits 1 to 3 were presented in three large boxes. The documents contained in the boxes were not separately marked or identified. This material was intermingled in an unorderly manner which created unnecessary efforts on appellate review. However, these exhibits were relied upon by expert witnesses who testified at appellant's hearing. Dr. Anderson testified that he relied upon the record of the first trial (exhibits 1 and 3) in forming his expert opinion; Dr. Mead testified that he relied upon the record of the 1993 annual hearing (exhibit 2) in forming his expert opinion; and Dr. Martin testified that he drew conclusions "based on the whole history" in forming his expert opinion.

Because the State's exhibits were not offered for the truth of the matter asserted therein, but instead were relied upon to provide a basis for expert testimony pursuant to rule 703, the district court did not err by admitting the exhibits into evidence.

### TESTIMONY OF LAW ENFORCEMENT OFFICIALS

Appellant next argues that the district court erred in permitting three members of local law enforcement to testify about public safety concerns in connection with a proposed upgrade in appellant's status at the LRC. Appellant's contention is that none of these law enforcement officials were qualified to give their opinions, as lay witnesses or as expert witnesses, and that the admission of such testimony violated the Nebraska rules of evidence and appellant's right to due process and treatment.

The district court denied the request of appellant and the recommendations of the LRC to change appellant's status at the LRC from modified code 2 to code 3. A code 2 patient is permitted on the LRC's grounds under supervision where the staff/patient ratio is at least 2:10. A code 2 patient is not permitted to go on therapeutic outings off the LRC's grounds. Code 3 status allows a patient to go on therapeutic outings off

the LRC's grounds under supervision where the staff/patient ratio is at least 2:10. These outings include trips to the circus, basketball games, swimming at available facilities, and attending picnics or movies in the Lincoln community. Appellant's code 2 status has been judicially modified to permit appellant to go on therapeutic outings off the LRC's grounds under at least one-on-one supervision of a staff member. However, the LRC must notify local law enforcement agencies before taking appellant on these outings.

At the hearing, the State called as witnesses the heads of three law enforcement agencies covering the jurisdiction of Lancaster County, where the LRC is located. These witnesses were Tussing, the superintendent of the State Patrol; Lacey, the Lancaster County Attorney; and Casady, the chief of the Lincoln Police Department. Each of these law enforcement officials testified, over the relevance, foundation, and lack of personal knowledge objections of appellant's counsel, that in his opinion appellant's request to be upgraded from modified code 2 to code 3 should be denied due to public safety concerns.

The State also called as a witness the LRC's medical records manager. She testified to the number and categories of recent escapes from the LRC. Her testimony is not challenged by appellant. Appellant's two expert witnesses, and four employees of the LRC, testified in favor of upgrading appellant's status.

The three law enforcement officials testified that they do not have day-to-day contact with appellant and do not have access to his treatment records. Thus, these witnesses based their opinion testimony upon various hearsay sources, rather than personal perceptions as required by Neb. Evid. R. 701, and therefore were not testifying as lay witnesses.

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise. Neb. Evid. R. 702. As previously discussed, if the facts or data upon which an expert bases an opinion are of a type reasonably relied upon by experts in the particular field in forming such opinions, the facts or data need not be admissible in evidence. Rule 703.

No attempt was made to qualify these law enforcement officials as experts in the fields of psychology or psychiatry or to have these officials testify in terms of appellant's mental illness or dangerousness. Their testimony was confined to terms of public safety in response to appellant's request to have his status at the LRC upgraded. The duties of all three witnesses deal with coordinating and protecting public safety. Because the record reflects that all three witnesses are experienced, educated, and trained in the area of public safety, they clearly possess specialized knowledge and are qualified as expert witnesses on the subject.

Having determined these witnesses qualify as experts on public safety pursuant to evidence rule 702, we turn to three other issues which must be resolved before ultimately determining whether such expert testimony was admissible evidence: (1) whether the experts' testimony was relevant; (2) whether the experts' testimony assisted the trier of fact to understand the evidence or determine a controverted factual issue; and (3) whether the experts' testimony, even though relevant and admissible, should have been excluded in light of Neb. Evid. R. 403. See, *State v. Chambers*, 241 Neb. 66, 486 N.W.2d 481 (1992); *State v. Reynolds*, 235 Neb. 662, 457 N.W.2d 405 (1990).

Relevant evidence is evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Neb. Evid. R. 401.

The express wording of § 29–3703 makes clear that courts are to consider public safety when determining what conditions of liberty and monitoring to place upon a person found to be mentally ill and dangerous. Thus, the opinion testimony of the State's experts concerning the impact an upgrade in appellant's status from modified code 2 to code 3 could have upon public safety was relevant evidence.

Furthermore, such testimony assisted the trier of fact in understanding the evidence and determining the outcome of this controverted status issue raised by appellant. Moreover, it cannot be said that the probative value of this relevant evidence is substantially outweighed by the danger of unfair prejudice,

confusion of the issues, misleading of the fact finder, or needless presentation of cumulative evidence. See rule 403. This testimony was probative on the issue of public safety. There is no indication that the testimony was applied by the district court, as the trier of fact, outside the public safety context. Thus, the district court did not err by permitting these three law enforcement officials to testify concerning public safety in relation to a proposed upgrade in appellant's status at the LRC.

## MENTALLY ILL AND DANGEROUS

Appellant next contends that the district court erred in finding that there was clear and convincing evidence that he is still mentally ill and dangerous. The trial court's findings have the effect of a verdict and will not be set aside unless clearly erroneous. *RaDec Constr. v. School Dist. No. 17, ante* p. 338, 535 N.W.2d 408 (1995); *State v. Masters*, 246 Neb. 1018, 524 N.W.2d 342 (1994). More specifically, an appellate court will not interfere on appeal with a final order made by the district court in a mental health commitment proceeding unless the court can say as a matter of law that the order is not supported by clear and convincing proof. *State v. Simants*, 245 Neb. 925, 517 N.W.2d 361 (1994); *Hayden I.*

Three expert witnesses testified at appellant's 1994 annual review hearing. Dr. Anderson, a psychiatrist, testified by deposition on behalf of the State. Dr. Mead, a professor in the department of psychiatry for Creighton University and the University of Nebraska Medical Center, and Dr. Martin, chief of service of the Forensic Mental Health Service at the LRC, testified on behalf of appellant.

Dr. Anderson first evaluated appellant in 1975 and testified on his behalf at both trials. His trial testimony was that appellant was suffering from schizophrenia at the time of the murders and, as a result, should be found not guilty by reason of insanity. Dr. Anderson evaluated appellant again in 1990 and reviewed his record at the LRC in 1993, finding each time that appellant remained both mentally ill and dangerous. Most recently, on July 12, 1994, Dr. Anderson examined and interviewed appellant for 90 minutes, examined LRC reports

from the last year, and found appellant's diagnosis to be the same as it had been for the past 20 years: schizophrenia, undifferentiated, chronic, but in remission. Dr. Anderson stated his opinion that appellant is "still mentally ill and . . . potentially dangerous if taken out of the structured environment in which he now lives."

Dr. Mead interviewed appellant for about 2 hours on July 15, 1994, and reviewed various reports. Dr. Mead testified that appellant "suffers still from some residual [mental illness]" and that "he can still be considered mentally ill." As for dangerousness, on cross-examination Dr. Mead admitted that "in the sense that I would not want to see him out of confinement . . . I would consider him dangerous." He testified his answer was the same as it had been at his deposition—that appellant, "based upon his past acts, still remains a person that is mentally ill and dangerous." Dr. Martin is in charge of formulating a treatment plan for appellant, who is hospitalized in Dr. Martin's unit at the LRC. He testified that appellant does not show any "significant or serious mental illness." However, Dr. Martin prepared a report entitled "1994 Annual Report to Lincoln County District Court on Erwin Charles Simants," which the State entered into evidence. In that report, Dr. Martin states:

> Mr. Simants exhibits a mental illness in the following sense: He has a history of serious alcoholism. He, in my opinion, met the criteria for a diagnosis of pedophilia at the time of the murders. He has a history of severe depression during the same period of his life. None of these diagnoses are clinically symptomatic at the present time. They all, however, carry some likelihood of reemergence.

Dr. Martin testified that appellant "is not acutely or actively dangerous, but that in the overall context of the crime and his pattern of mental illness, that there is certainly a reasonable concern relative to a remote dangerousness." In his report, Dr. Martin states that appellant is "dangerous in the sense of having previously acted out during a period when his issues of mental illness were seriously active."

Based on the totality of this expert evidence, the district

court's finding of clear and convincing evidence that appellant is and continues to be mentally ill and dangerous to others by reason of his mental illness and will continue to be dangerous in the foreseeable future was not clearly erroneous.

### TREATMENT PLAN

Finally, appellant contends that the district court violated his right to treatment under § 29-3703 and "the Fourth [sic] and Fourteenth Amendments to the United States Constitution," as well as article I, § 3, of the Nebraska Constitution, by not ordering the LRC to administer a specific treatment program.

After finding appellant to be both mentally ill and dangerous, the district court ordered appellant confined to the Forensic Mental Health Service unit of the LRC "for appropriate psychiatric treatment by the staff of the Regional Center." Appellant contends that because the district court accepted the opinion of Dr. Anderson and substantially discounted the opinions of appellant's witnesses, it should have ordered the LRC to administer Dr. Anderson's specific treatment recommendations. Dr. Anderson testified appellant should receive individual psychodynamic–oriented therapy.

Upon appellant's appeal of his 1993 annual review hearing, this court held that the purpose of the acquitted persons statutes is to protect the public from mentally ill dangerous persons who have demonstrated their dangerous proclivities by committing criminal acts for which they are not punished because of insanity. *State v. Simants*, 245 Neb. 925, 517 N.W.2d 361 (1994) (quoting *Tulloch v. State*, 237 Neb. 138, 465 N.W.2d 448 (1991)). This court has not held, and the legislative history and plain meaning of the statute do not indicate, that the purpose of § 29-3703 is for the courts to direct psychiatrists and psychologists on how to best treat the mental illness of a person committed.

The district court's order followed the directives of § 29-3703 by balancing the treatment needs of appellant with public safety concerns. Therefore, the district court did not err by not ordering the LRC to administer a specific treatment plan.

### CONCLUSION

We affirm the district court's order because (1) there was

clear and convincing proof appellant remains both mentally ill and dangerous and (2) his status at the LRC should not be upgraded due to public safety concerns.

AFFIRMED.