JAMES W. SHERIDAN, petitioner.

Berkshire. March 4, 1992. - May 8, 1992.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Sex Offender. Evidence*, Communication between patient and psychotherapist. *Constitutional Law*, Self-incrimination.

Where a petitioner seeking release from commitment as a sexually dangerous person refused to appea for a court-ordered psychiatric examination pursuant to G. L. c. 123A, § 9, a judge's dismissal of the petition did not improperly burden the petitioner's exercise of the patient-psychotherapist privilege under G. L. c. 233, § 20B, which includes his asserted right not to provide any information to the Commonwealth's examiners; the judge correctly concluded that § 9 required the petitioner to appear for the scheduled examination and claim the privilege in that forum. [602-605]

The requirement of G. L. c. 123A, § 9, that a petitioner seeking release from commitment as a sexually dangerous person appear for a court-ordered psychiatric examination did not violate either his State or Federal right to be secure against compulsory self-incrimination. [605]

PETITION filed in the Superior Court Department on May 13, 1988.

The case was heard by *Elbert Tuttle*, J., on a motion to dismiss.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Sondra H. Schmidt* for the petitioner.

*Nancy W. Geary*, Assistant Attorney General, for the Commonwealth.

NOLAN, J. The petitioner, James W. Sheridan, appeals from the dismissal of his petition under G. L. c. 123A, § 9 (1988 ed.), for discharge from the treatment center at the Massachusetts Correctional Institution at Bridgewater (treatment center). The petitioner claims that the Superior

Court judge erred in ruling that his refusal to appear for court-ordered interviews on the basis of the patient-psycho-therapist privilege (G. L. c. 233, § 20B [1990 ed.]) warranted dismissal of his petition under c. 123A, § 9. We transferred the appeal here on our own motion and now affirm the judgment.

On October 26, 1984, the petitioner was committed for a period of from one day to life to the treatment center, having been determined at that time to be a sexually dangerous person[1] as defined by G. L. c. 123A, § 6 (1988 ed.) (repealed by St. 1990, c. 150, § 304).[2] On May 13, 1988, the petitioner filed for examination and discharge from the treatment center, pursuant to G. L. c. 123A, § 9.[3] In November of

---

[1]A sexually dangerous person is defined as "any person whose misconduct in sexual matters indicates a general lack of power to control his sexual impulses, as evidenced by repetitive or compulsive sexual misconduct by either violence against any victim, or aggression against any victim under the age of sixteen years, and who, as a result, is likely to attack or otherwise inflict injury on such victims because of his uncontrolled or uncontrollable desires." G. L. c. 123A, § 1 (1990 ed.). So far as the record reveals, the petitioner's commitment to the treatment center was based, in part, on his 1976 convictions of two counts of rape, assault and battery, and unnatural and lascivious acts.

[2]By St. 1990, c. 150, § 304, effective September, 1990, the Legislature repealed §§ 3-6, and 7 of G. L. c. 123A and provided that "no person shall be newly committed to the treatment center for sexually dangerous persons or to any branch thereof under the provisions of [c. 123A] on or after September first, nineteen hundred and ninety; provided, however, that all persons committed to said treatment center, as of said date . . . shall be maintained at said treatment center subject to [c. 123A]." St. 1990, c. 150, § 104. See *Commonwealth* v. *Arment, ante* 55, 57 n.2 (1992).

[3]General Laws c. 123A, § 9, as amended by St. 1987, c. 116, states, in relevant part:

"Any person committed to the center shall be entitled to file a petition for examination and discharge once in every twelve months. Such petition may be filed by either the committed person, his parents, spouse, issue, next of kin or any friend. The department of mental health may file a petition at any time it feels a person is no longer a sexually dangerous person. . . . The petitioner shall have a right to a speedy hearing on a date set by the administrative justice of the superior court department. . . . *The court shall order the petitioner to be examined by two qualified examiners, who shall be appointed by the commissioner of mental health, and who shall conduct examinations, including personal interviews, of the person on whose behalf such petition is filed and file with the court written*

1990, two qualified mental health professionals, appointed by the Commissioner of Mental Health (commissioner), informed the petitioner that each would meet with him in December to conduct an interview pursuant to c. 123A, § 9. See note 3, *supra*. By letters dated November 29, 1990, and December 6, 1990, the petitioner informed both examiners that he was exercising his rights under *Commonwealth* v. *Lamb*, 365 Mass. 265 (1974), and was unwilling, therefore, to meet with them. See G. L. c. 233, § 20B (1990 ed.)[4] (patient-psychotherapist privilege). Subsequently, the Commonwealth moved to dismiss the § 9 petition on the ground that the petitioner refused, without good cause, to meet with the examiners, thereby preventing the Commonwealth from accurately assessing his mental and emotional condition. See note 3, *supra*. The petitioner opposed the Commonwealth's motion, arguing that dismissal of the petition in this circumstance would render meaningless the patient-psychotherapist privilege. The petitioner also argued that the Commonwealth did

---

*reports of their examinations and diagnoses, and their recommendations for the disposition of such person. . . . If such person refuses, without good cause, to be personally interviewed by a qualified examiner appointed pursuant to this section, such person shall be deemed to have waived his right to a hearing on the petition, and the petition shall be dismissed upon motion filed by the commonwealth."* (emphasis added).

[4]The pertinent portions of G. L. c. 233, § 20B (1990 ed.), are set forth as follows:

"Except as hereinafter provided, in any court proceeding and in any proceeding preliminary thereto and in legislative and administrative proceedings, a patient shall have the privilege of refusing to disclose, and of preventing a witness from disclosing, any communication, wherever made, between said patient and a psychotherapist relative to the diagnosis or treatment of the patient's mental or emotional condition.

". . .

"The privilege granted hereunder shall not apply to any of the following communications: —

". . .

"(*b*) If a judge finds that the patient, after having been informed that the communications would not be privileged, has made communications to a psychotherapist in the course of a psychiatric examination ordered by the court, provided that such communications shall be admissible only on issues involving the patient's mental or emotional condition but not as a confession or admission of guilt."

not need to conduct interviews to assess his present mental health and fitness for release from the center, since his treatment file contained all relevant information.

After conducting an evidentiary hearing on the motion to dismiss, the judge concluded that the Commonwealth was entitled to dismissal of the petition because the petitioner had refused, without good cause, to meet with the examiners.[5] The judge acknowledged that a patient who seeks discharge from the treatment center under c. 123A, § 9, such as the petitioner, has the right under G. L. c. 233, § 20B, to keep privileged any communications made to a psychotherapist in the case of a court-ordered examination, absent a showing that the patient waived such privilege. *Commonwealth* v. *Lamb, supra* at 270. However, the judge ruled, G. L. c. 123A, § 9, requires that, in any event, the petitioner first appear before two qualified examiners appointed by the commissioner. The judge explained that a petitioner properly may refuse to provide any information to the examiners at that time. Such a refusal, the judge opined, does not entitle the Commonwealth to dismissal under § 9. Rather, the Commonwealth is entitled to dismissal, the judge concluded, where, as in the instant case, the petitioner refused to attend the scheduled examinations.

On appeal, the petitioner challenges this ruling, arguing that dismissal of his petition operates as a penalty against him for having invoked the protections of the patient-psychotherapist privilege. Further, the petitioner complains that dismissal of his petition impinges on his exercise of the right against self-incrimination under the State and Federal Constitutions. According to the petitioner, § 9 mandates that treatment center patients submit to personal interviews with qualified examiners or forfeit the right to pursue their petitions. This choice, the petitioner contends, improperly forces the patients either to waive the patient-psychotherapist privi-

---

[5]We note that the issue as to whether the petitioner's declination to be interviewed on the basis of the patient-psychotherapist privilege constituted a refusal "without good cause" was not specifically addressed by the parties or the lower court at any stage of this proceeding.

lege and receive a hearing on the § 9 petition, or to invoke the privilege and forfeit procedural due process. In this way, the petitioner asserts that the provisions of § 9 effectively deny him the right not to provide any information to the Commonwealth's examiners under G. L. c. 233, § 20B. *Commonwealth* v. *Lamb*, 365 Mass. 265, 270 (1974). The petitioner maintains that he can neither be denied the right to refuse to communicate with the Commonwealth's examiners nor be penalized for refusing. The petitioner notes that in a § 9 proceeding the Commonwealth bears the burden of proving beyond a reasonable doubt that a person is sexually dangerous at the time of the hearing, and such person is not obligated to present any evidence on this issue whatsoever. *Andrews, petitioner*, 368 Mass. 468, 485-486 (1975). The petitioner argues that the effect of the dismissal under § 9, however, is to shift the burden of proof in § 9 proceedings from the Commonwealth to the petitioner, impermissibly forcing him to prove that he is no longer sexually dangerous. Lastly, the petitioner contends that the judge's attempt to harmonize his rights with the statute results in a meaningless interpretation of § 9, whereby it requires that a treatment center patient appear at scheduled examinations, in order to preserve his right to a hearing and prevent his petition from being dismissed, regardless of whether he intends to participate. The petitioner urges that his mere presence at such examinations assists the Commonwealth in meeting its burden of proof by allowing a trained examiner to scrutinize his manner, appearance, and behavior at that time, amounting to compelled self-incrimination.

The petitioner's arguments are not without appeal. Clearly, the amendment to c. 123A, § 9, reflects a legislative determination that § 9 petitioners should be interviewed by qualified examiners before being considered for release from the treatment center. This policy seems to conflict directly with the petitioner's right to invoke the patient-psychotherapist privilege, and the dismissal provision could be viewed as compelling the petitioner to disclose information which may lead to a conclusion that he remains sexually dangerous.

However, we must interpret § 9 in light of the primary objective of c. 123A, which is to care for, treat, and, it is hoped, rehabilitate the sexually dangerous person, while at the same time protecting society from this person's violent, aggressive, and compulsive behaviors. *Commissioner of Correction* v. *McCabe*, 410 Mass. 847, 852-853 (1991), quoting *Commonwealth* v. *Hogan*, 341 Mass. 372, 376 (1960). *Commonwealth* v. *Rodriguez*, 376 Mass. 632, 646 (1978) (the purpose of c. 123A is to "[protect] the public against future antisocial behavior by the offender, and of doing all that can be done to rehabilitate him"). We are not passing on whether the amendment overrides the patient-psychotherapist privilege. As so construed, we do not pass on the constitutionality of the amendment.

In effecting the remedial purposes of c. 123A, the Legislature has the freedom to condition the discharge of a sexually dangerous person, in order "to prevent [that] individual, whom a judge has determined to be sexually dangerous, from being returned to society without having been successfully treated for his condition." *Commissioner of Correction* v. *McCabe*, *supra* at 852. Requiring sexually dangerous persons to submit to personal interviews prior to considering them for discharge may be the most effective means of advancing the statutory goals. However, the ability of the Legislature so to condition a patient's discharge is limited by the patient-psychotherapist privilege, which prevents the government from compelling the disclosure of communications made by a person under c. 123A custody to a psychiatrist appointed to examine him and report to the court. *Commonwealth* v. *Lamb*, *supra* at 266. Indeed, patients involved in c. 123A proceedings must be notified of their right to claim the patient-psychotherapist privilege, which includes the option to decline to speak with the Commonwealth's examiners. *Id*. See *Commonwealth* v. *Gomes*, 355 Mass. 479, 484 (1969).

When drafting the 1987 amendment to § 9, the Legislature understood the relationship between a § 9 petitioner's rights and the societal interest in rehabilitating sexually dangerous persons. We agree, therefore, with the judge's conclu-

sion that the language of § 9 can only be interpreted as requiring such persons to appear at scheduled examinations, where they shall be informed of their right to invoke the patient-psychotherapist privilege as well as the consequences of doing so, and directing them to announce formally their decision in that forum. As the Commonwealth correctly points out, this procedure ensures that § 9 petitioners understand their rights in the circumstances and the consequences of claiming the privilege. Since the petitioner refused to attend the scheduled examination, the judge properly dismissed his petition under § 9.

The petitioner's State and Federal rights against self-incrimination are not violated by requiring that he attend the scheduled examination. As an initial matter, c. 123A proceedings are not criminal prosecutions and nothing which a patient reveals during a court-ordered examination may be used against him in a criminal proceeding. *Commonwealth* v. *Barboza*, 387 Mass. 105, 114 (1982). Therefore, the petitioner's State and Federal rights against self-incrimination are not implicated by his compelled appearance at the examination. *Id. Murphy* v. *Waterfront Comm'n of N.Y. Harbor*, 378 U.S. 52, 94 (1964) (White, J., concurring). Second, neither the State nor the Federal constitutional right against self-incrimination prevents a third party from simply observing a person. See *Commonwealth* v. *Brennan*, 386 Mass. 772, 781-782 (1982). A person's mere appearance before another cannot be said to be communicative or testimonial in nature, at least insofar as constitutional protections are concerned, regardless of whether certain behaviors or manners exhibited by the person provide the observer with a basis on which to render an evaluation of his mental health.

*Judgment affirmed.*