Macdonald, D. Lloyd, J.
Before the Court is the defendant’s motion to suppress statements he made to a Department of Mental Health social worker who was interviewing the defendant in connection with a G.L.c. 123, §12 involuntary commitment. A mental health counselor to whom the defendant had gone for treatment had earlier initiated the commitment process. The grounds for the motion are, first, that the defendant was not provided a Lamb warning prior to making the statement, second, that the statement was involuntary, and, third, that, in any event, the statement by its nature was confidential and privileged and cannot be used as evidence without the defendant’s consent. The motion is DENIED for the reasons that follow.
Facts
The defendant is charged with rape of a child with force, indecent assault and battery on a child under 14 and assault and battery with a dangerous weapon.
The case arises from statements that the defendant made in a counseling session at Northeast Health Services (“NEHS”) in Taunton in August 2009. The defendant had been a client/patient of NEHS before. Tracey Kelce (“Kelce”), a staff “rehabilitation counselor,” was assigned to meet with him. In short order, the defendant described to Kelce that he had a serious problem with his girlfriend who had recently thrown him out of her house. She did so because she had found out that the defendant had had sexual relations (sexual intercourse) with her daughter from the time the daughter was thirteen. The defendant acknowledged the relationship to Kelce, but he claimed that it was over. When Kelce informed the defendant that she was obligated by G.L.c. 119, §51A to report his disclosure to the Department of Children and Families (“DCF”), the defendant became very angry and, then, distraught, threatening to kill himself. Concerned that the defendant was suicidal, Kelce initiated a Section 12 involuntary commitment. She called for an ambulance, which then transported the defendant to the Morton Hospital in Taunton. She also promptly made a §51A report to DCF.
At the Morton Hospital, the defendant was interviewed by Robert Kinsley (“Kinsley”), a social worker. Kinsley was on the staff of Taunton Attleboro Emergency Services (‘TAES”), an agency of the Department of Mental Health (“DMH” or the “Department”). TAES was under contract with Morton Hospital to provide emergency mental health assessments. Prior to the interview, Kinsley did not give the defendant a so-called Lamb warning to the effect that the interview was unprivileged and that its content could be communicated to others.[1] In the interview, the defendant initially denied to Kinsley that he had a sexual relationship with the victim. However, when confronted by Kinsley with his earlier disclosure to Kelce, the defendant acknowledged the relationship. It is his self-incriminating statements in that regard to Kinsley that the defendant seeks to suppress.[2]
At the conclusion of the interview, Kinsley recommended to the senior Morton medical staff that the defendant be committed under Section 12. The defendant was thereafter held and admitted to the Arbour Hospital in Jamaica Plain for depression, suicidal risk and for further assessment.
Kelce and Kinsley testified before the Court. The Court found both to be entirely credible.
Kinsley testified that he is familiar with the content and use of the Lamb warning. He described that he routinely gave such warnings when earlier in his career he did psychological assessments of juveniles for DYS in connection with their detention status. However, Kinsley reported that he had never given such a warning when doing a Section 12 assessment, notwithstanding having done “hundreds” of them.
Kinsley found the defendant to be depressed, anxious, somewhat disheveled and with “neglected hygiene.” However, Kinsley described that the defendant was “in contact," lucid, responsive and exhibited no hallucinations. During the course of the interview, which lasted more than an hour, the defendant was *45 initially nervous but then settled down, according to Kinsley, and exhibited full awareness of what was transpiring. Kinsley entered his detailed findings as to the defendant’s appearance and mental functioning on a standard Emergency Screening and Treatment Form. See Exhibit 1.
Discussion
1.The Lamb Issue.
A Lamb warning is required in the context of the application of the statutoiy psychotherapist privilege under G.L.c. 233, §20B. The question before the SJC in Lamb was whether an examination by a psychotherapist in connection with a G.L.c. 123A sexually dangerous person action had to be preceded by a warning as to the interview not being privileged if the Commonwealth were to be able to use the results of the interview in the determination of the subject’s SDP status. Subsection (b) §20B provides for waiver of the privilege where “after having been informed that the communications would not be privileged, [a patient] has made communications to a psychotherapist in the course of a psychiatric examination ordered by the court.” The SJC held that an SDP proceeding was one where the “psychiatric examination [was] ordered by the court.” It thus required that the warning be given for the privilege to be considered waived. Stated differently, the Lamb court held that if the warning as to the non-confidential nature of the interview were not given, the declarant would have recourse to bar the subsequent use of the statement on account of the surviving statutoiy privilege.
The SJC has extended the requirement of a Lamb warning to clinical examinations of juveniles who are being evaluated for extended commitments to DYS. See Dept. of Youth Services v. A Juvenile, 398 Mass. 516, 526 (1986). The court held there that what is determinative is the purpose of the examination: If it is “to protect the public ‘against future anti-social behavior by the offender’ and to rehabilitate him,” then the warning must be given for the privilege to be considered waived. Id.
However, Lamb does not apply to an interview in the context of a subsequent §51A report to DCF or to law enforcement. G.L.c. 119, §51A(j). See Mass. Evid. Guide §503(7). Nor is a Lamb warning required where a disclosure has been made voluntarily to a mental health professional without involvement by law enforcement. See Commonwealth v. Brandwein, 435 Mass. 623, 628-31 (2002) (noting, inter alia, that§20B “only grants an evidentiary privilege within the course of a ‘proceeding’ it does not provide that patient/psychotherapist communications are by their nature confidential as a matter of law).
Leaving aside the threshold question as to whether Kinsley was acting as a statutorily defined “psychotherapist” (it appears that he was not but for these purposes, the Court assumes that he was), Kinsley’s communication of the defendant’s disclosure of his sexual relations with a minor was permitted by the first exception contained in the body of §20B. Subsection (a) provides that the privilege “shall not apply .. . [where the therapist] determines that the patient is in need of treatment in a hospital for mental or emotional illness or that there is a threat of imminently dangerous activity by the patient against himself or another person.” The latter was the essence of Kinsley’s determination.
For the above reasons, the failure of Kinsley to provide a Lamb warning did not affect the lawfulness of Kinsley’s subsequent disclosure of the defendant’s admissions.
2.Voluntariness of the defendant’s disclosure.
The test for voluntariness of a confession is “whether, in light of the totality of the circumstances surrounding the making of the statement, the will of the defendant was overborne to the extent that the confession was not the result of a free and voluntary act.” Commonwealth v. Selby, 420 Mass. 656, 663, 651 N.E.2d 843 (1995). Among the relevant factors we consider under the “totality of the circumstances test” are “promises or other inducements, conduct of the defendant, the defendant’s age, education, intelligence and emotional stability, experience with and in the criminal justice system, physical and mental condition, the initiator of the discussion of a deal or leniency (whether the defendant or the police), and the details of the interrogation, including the recitation of Miranda warnings.” Id., quoting Commonwealth v. Mandile, 397 Mass. 410, 413 (1986).
Commonwealth v. Lopes, 455 Mass. 147, 167 (2009).
As noted earlier, the Court found Kinsley to have been an entirely credible witness. Other than the circumstance that the defendant was upset, nervous and anxious and presented as one who was a danger to himself, the defendant was lucid and in contact with his surroundings during the interview. The disclosure that he made to Kinsley about having had intercourse with the victim was in substance the same as the disclosure he had made voluntarily to Kelce a short while before. There is no evidence that the defendant’s will was overborne. See Exhibit 1 for the record of Kinsley’s detailed clinical observations.
Having considered the totality of the circumstances, the Court concludes that the defendant’s statement was voluntarily made beyond a reasonable doubt.
3.The Privilege Issue.
While cast as part of his motion to suppress, the defendant seeks in the nature of a motion in limine a ruling from the Court that the disclosure of his sexual relations with the thirteen-year-old victim was privileged and, thus, at his option, is excludable at trial. The argument is plausible because even though, as noted above, the psychotherapist privilege did not *46 apply to Kinsley’s report for purposes of the defendant’s Section 12 commitment, subsection (a) of G.L.c. 233, §20B further provides that “the provisions of this section [i.e., 20B] shall continue in effect after the patient is in said hospital, or placing the patient under arrest or under the supervision of law enforcement authorities.” This provision suggests that while subsection (a) suspends the privilege in order to secure emergency care for a patient, it revives the application of the privilege as to any subsequent use of the disclosed information.
At this juncture, it is necessary to be more precise about Kinsley’s professional status. He is not a psychiatrist or a psychologist. Rather, he received a masters degree in social work (MSW) and was previously employed as a social worker at the Brockton YMCA, where he did the DYS clinical assessments noted above. Kinsley also worked at a crisis center in New Bedford and for the Massachusetts Society of Prevention of Cruelty to Children. He described his present status as a “clinical social worker at the Department of Mental Health.” As such, Kinsley appears to be what is referred to in G.L.c. 112, §172 as an “allied mental health professional” or a “human services professional.”
In such capacity, “[a]ny communication . . . [with] a client shall be deemed to be confidential.” Id. See also Mass. Evidence Guide, §508. The SJC has noted that while it may “seem anomalous,” G.L.c. 112, §172 in fact places “greater confidentiality requirements” on its practitioners than G.L.c. 233, §20B places on psychotherapists.[3]
Assuming (without deciding) that the defendant was Kinsley’s “client" for purposes of the statute, the defendant’s disclosure to Kinsley of his sexual relationship with the 13-year-old victim was subject, nevertheless, to an explicit statutory waiver. Specifically, the statute further provides: “Said privilege [of confidentiality] shall be subject to waiver: . . . (c) when the communication reveals the contemplation or commission of a crime or a harmful act.” The defendant unquestionably “reveal[ed]” to Kinsley “the commission of a crime or a harmful act.” Thus, the privilege was waived. As a result, there is no basis to rule that the defendant’s revelation of his sexual relationship with the 13-year-old victim is inadmissible at trial on account of its having been a privileged communication.
ORDER
The defendant’s motion to suppress is DENIED.

See Commonwealth v. Lamb, 365 Mass. 265, 269-70 (1974).

A separately filed motion to suppress the statements to Kelce (Paper #14) is also denied. See endorsement thereon.

Although not material to the Court’s decision, the Court notes that an attorney for the DMH appeared at the hearing on the instant motion. Upon being invited by the Court to state the Department’s position on the issue, the attorney informed the Court that the Department considers commu-. nications to clinical social workers like Kinsley in the Section 12 context to be confidential. As such, the attorney stated that the communications ought to be inadmissible against the subject in a subsequent criminal proceeding unless consented to by the subject.