DISSENTING OPINION
Pierce, J.
While I agree with the majority’s analysis of the exception set forth at paragraph {a) of G.L.c. 233, §20B, I write to take issue with the determination that the paragraph (b) exception does not apply to G.L.c. 123, §7,8 civil commitment proceedings. At issue is whether a psychotherapist, examining a patient at the request of a mental health facility, potentially in connection with a petition for civil commitment, should be required to discuss with the patient the limits of confidentiality and to obtain a voluntary and knowing waiver of the privilege before disclosing patient communications, pursuant to the paragraph (b) exception.
*10 The majority believes that no such discussion is required. I respectfully disagree. I find that where the psychotherapist examination is initiated by the petitioner, for the purpose of determining whether to proceed with civil commitment, paragraph (b) does apply and the patient should be administered Commonwealth v. Lamb, 365 Mass. 265 (1974) warnings.
What is required is a balancing of two important interests. On the one hand, civil commitments are for the purpose of providing treatment to patients, not punishment. On the other hand, civil commitments involve a substantial loss of liberty “and the societal stigma which attaches to an individual from commitment to a mental hospital.” Matter of Laura L., 54 Mass. App. Ct. 853, 861 (2002).
On one subject, the parties agree: the statements at issue are privileged. Section 20B of G.L.c. 233 states, “ [I] n any court proceeding ..., a patient shall have the privilege of refusing to disclose, and of preventing a witness from disclosing, any communication, wherever made, between said patient and a psychotherapist relative to the diagnosis or treatment of the patient’s mental or emotional condition” (emphasis added).[1] The privilege applies to “any court proceeding,” subject to six exceptions, only two of which relate to this appeal. The exception found at paragraph (b) provides: “If a judge finds that the patient, after having been informed that the communications would not be privileged, has made communications to a psychotherapist in the course of a psychiatric examination ordered by the court, provided that such communications shall be admissible only on issues involving the patient’s mental or emotional condition but not as a confession or admission of guilt.”
By its terms, the paragraph (b) exception to §20B applies to psychotherapist examinations “ordered by the court.” Not unreasonably, the majority focuses its analysis on the words of the statute. However, in so doing, I believe the majority gives insufficient weight to how the Supreme Judicial Court has construed the relevant statutory language.
In Department of Youth Servs. v. A Juvenile, 398 Mass. 516 (1986) ^Department of Youth Sens.”), the Department sought to extend the term of a juvenile’s commitment past his eighteenth birthday. A psychiatrist, engaged by the Department and not ordered by the court, met with the juvenile without administering Lamb warnings. Based on evidence, including statements made by the juvenile to the psychiatrist, the trial court granted the Department’s extension request. On appeal, the Supreme Judicial Court found that the requirements of Lamb “do not depend on whether the Commonwealth chooses to interview a person on its own initiative or decides to seek court permission” (emphasis added). Id. at 526. The Court attached less importance to whether there was specific court authorization for the examination and more importance to whether the examination was undertaken at the patient’s own initiative or at the initiative of the petitioner. Here, as in Department of Youth Sens., the party petitioning the court for commitment caused a psychothera *11 pist to interview the responding party.
Consistent with the reasoning of Department of Youth Servs., I conclude that a psychotherapist examining a patient in connection with an involuntary civil commitment petition, at the request of the petitioning party, should be required to discuss with the patient the limits of confidentiality as required by Lamb and, before disclosing the content of any confidential communications pursuant to the paragraph (b) exception, to demonstrate that the patient knowingly and voluntarily waived the privilege.
The petitioner, Walden Behavioral Care, argues that requiring Lamb warnings in connection with civil commitment hearings “would cause the psychotherapist patient relationship to start out on an adversarial basis which can greatly hinder the patient’s treatment.” That argument ignores the damage to the relationship and to the patient’s ultimate prospects for treatment that may result from a patient belatedly learning that statements the patient reasonably believed were privileged and confidential, are being offered into evidence at an adversarial hearing in support of a commitment petition. I share the concern expressed by the Court Matter of Laura L, supra at 855-856, that, without Lamb warnings, a patient’s initial decision to speak with a mental health professional may be motivated by a belief that doing so is the best strategy for avoiding commitment. In some cases, it may be the best strategy; in others, it is not. As the majority points out, there are instances where a patient is unable to understand Lamb warnings or otherwise intelligently waive the privilege. It is also true that such cases often present the most compelling need for civil commitment to protect the health and welfare of the patient and others. Where Lamb warnings have been administered and either the patient does not understand them or is incapable of knowingly waiving the privilege or knowingly refuses to waive the privilege, I find that the petitioner is not foreclosed from seeking to admit otherwise privileged communications pursuant to the paragraph (a) exception.
Under paragraph (a) the privilege does not apply in circumstances where “a psychotherapist, in the course of his diagnosis or treatment of the patient, determines ... that there is a threat of imminently dangerous activity by the patient against himself or another person, and on the basis of such determination discloses such communication for the purpose of placing or retaining the patient in such hospital.” Therefore, where Lamb warnings have been administered, but not understood or waived, and where the patient’s statements demonstrate that “there is a threat of imminently dangerous activity by the patient against himself or another person,” otherwise privileged statements would be admissible under the paragraph (a) exception.
In this way, patients capable of understanding the privilege and knowingly deciding whether to waive it would be afforded the intended protection of the statute, without precluding the admission of highly relevant, but otherwise privileged communications, upon the requisite showing of imminent harm.

 “Communications” are broadly defined to include “conversations, correspondence, actions and occurrences relating to diagnosis or treatment.” “Psychotherapist” is defined to include a psychiatrist, psychologist, a graduate of, or student enrolled in, a doctoral degree program in psychology, or a certified psychiatric nurse mental health clinical specialist. G.L.c. 233, §20B.