NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11704

WALDEN BEHAVIORAL CARE  vs.  K.I.


Middlesex.     December 2, 2014. - April 9, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk,
& Hines, JJ.


Mental Health.  Practice, Civil, Commitment of mentally ill
     person, Waiver.  Psychotherapist.  Witness, Psychiatric
     examination, Privilege.  Evidence, Privileged
     communication.  Privileged Communication.  Waiver.


     Petition for civil commitment filed in the Waltham Division
of the District Court Department on August 13, 2012.

     The case was heard by Gregory C. Flynn, J.

     The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


     Stan Goldman for the respondent.
     Diane M. Geraghty Hall for the petitioner.
     Jennifer Honig, Phillip Kassel, Robert Fleischner, & Stan
Eichner, for Mental Health Legal Advisors Committee & others,
amici curiae, submitted a brief.


     DUFFLY, J.  Walden Behavioral Care, a facility for the

treatment of mentally ill patients, brought a petition in the

District Court pursuant to G. L. c. 123, §§ 7, 8, seeking to commit K.I. involuntarily and retain him in its facility. K.I. filed a motion in limine to exclude from the commitment hearing testimony concerning statements he had made to his treating psychiatrist at Walden Behavioral Care. K.I. claimed that his statements were protected by the psychotherapist-patient privilege as defined in G. L. c. 233, § 20B, and that the psychiatrist was precluded from testifying to those statements or to his opinion of K.I.'s mental or emotional condition based on those statements.

A District Court judge denied K.I.'s motion, concluding that the psychotherapist-patient privilege was overcome by an exception to the privilege set forth in G. L. c. 233, § 20B (a). At the commitment hearing, the psychiatrist was permitted to testify to statements made to him by K.I., and to his opinion that K.I. was suicidal. Based on this testimony, K.I. was committed to Walden Behavioral Care for six months. K.I. appealed the commitment order to the Appellate Division of the District Court; in a divided opinion, the court affirmed the commitment. K.I. appealed, and we transferred the case from the Appeals Court on our own motion.

We conclude that the exception to the psychotherapist-patient privilege established in G. L. c. 233, § 20B (a), applies in the circumstances presented. Notwithstanding the

absence of a knowing and intelligent waiver of the privilege, there was no error in permitting the psychiatrist to testify at the involuntary commitment hearing concerning K.I.'s statements.[1]

Background. In August, 2012, a physician petitioned for K.I.'s emergency admission to Walden Behavioral Care pursuant to G. L. c. 123, § 12 (a).[2] In a petition pursuant to G. L. c. 123, § 12 (a), a physician wrote that K.I. was experiencing auditory hallucinations and attempting to kill himself by running into traffic. Within two hours of his arrival, K.I. was examined by a physician who authorized K.I.'s commitment to the facility for three days "for care and treatment" pursuant to G. L. c. 123, § 12 (b). See Reida v. Cape Cod Hosp., 36 Mass. App. Ct. 553, 555-556 (1994). During this three-day period, Dr. David Brendel, a psychiatrist, provided diagnosis of and treatment to K.I. In his capacity as superintendent of Walden Behavioral Care, Brendel thereafter filed a petition for K.I.'s continuing

---

[1] We acknowledge the amicus brief of the Mental Health Legal Advisors Committee, the Center for Public Representation, and the Disability Law Center on behalf of the respondent.

[2] General Laws c. 123, § 12 (a), authorizes "any" licensed physician to apply for a person's admission to a "facility authorized" to provide mental health treatment, whom the physician has reason to believe would pose "a likelihood of serious harm by reason of mental illness" if not hospitalized. See Reida v. Cape Cod Hosp., 36 Mass. App. Ct. 553, 556 (1994). Any "qualified psychologist, qualified psychiatric nurse mental health clinical specialist, or licensed independent clinical social worker" also may do so. G. L. c. 123, § 12 (a).

commitment under G. L. c. 123, §§ 7, 8.[3] At no time was K.I. warned that, in certain circumstances, his statements to his treating psychiatrist might be admissible in future legal proceedings.

K.I. filed a motion in limine to exclude Brendel's testimony regarding K.I.'s statements. K.I. maintained that his statements were protected by the psychotherapist-patient privilege, and that the sole potentially applicable exception to the privilege was set forth in G. L. c. 233, § 20B (b), concerning statements made to a psychiatrist in the course of court-ordered examinations. K.I. argued that the statements therefore were tantamount to statements made in the course of a court-ordered examination, and, because he had not been informed that his communications to Brendel would not be privileged, as required by G. L. c. 233, § 20B (b), this exception was unavailable and his privileged statements should not have been admitted. A District Court judge denied K.I.'s motion, concluding that the psychotherapist-patient privilege was overcome by the imminent harm exception to the privilege set forth in G. L. c. 233, § 20B (a); the judge determined that the

_____

[3] Pursuant to G. L. c. 123, § 12 (d), a person must be discharged after three days unless the superintendent of a facility applies for a commitment order under G. L. c. 123, §§ 7, 8, or the person chooses to remain voluntarily.

exception provided by G. L. c. 233, § 20B (b), was inapplicable.

Brendel testified at the commitment hearing that K.I. had made repeated statements that voices were telling him to kill himself by overdosing on Oxycodone, and that he had access to Oxycodone in his apartment and intended to overdose when he was released.  Based on these statements, Brendel testified to his opinion that K.I. was suicidal, and, if released, would pose a likelihood of serious harm to himself by reason of his mental illness.[4]  On the basis of this testimony, a District Court judge ordered K.I. committed to Walden Behavioral Care for six months.

Discussion.  1.  Standard of review.  We review questions of statutory interpretation de novo.  Sheehan v. Weaver, 467 Mass. 734, 737 (2014).  "[T]he statutory language itself is the principal source of insight into the legislative purpose."  Hoffman v. Howmedica, Inc., 373 Mass. 32, 37 (1977).  In conducting our review, "a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated."  Worcester v. College Hill Properties, LLC, 465

_____

[4] Dr. David Brendel testified also to his diagnosis of K.I. as having schizophrenia, paranoid type.

Mass. 134, 139 (2013), quoting Harvard Crimson, Inc. v. President & Fellows of Harvard College, 445 Mass. 745, 749 (2006).

2. Psychotherapist-patient privilege. The psychotherapist-patient privilege set forth in G. L. c. 233, § 20B, applies to exclude from court proceedings, and from legislative and administrative proceedings, statements made by a patient to a psychotherapist relative to the diagnosis or treatment of the patient's mental or emotional condition. General Laws c. 233, § 20B,[5] provides, in relevant part:

> "[I]n any court proceeding and in any proceeding preliminary thereto and in legislative and administrative proceedings, a patient shall have the privilege of refusing to disclose, and of preventing a witness from disclosing, any communication, wherever made, between said patient and a psychotherapist relative to the diagnosis or treatment of the patient's mental or emotional condition."

The privilege "continue[s] in effect after [a] patient" has been hospitalized in a mental health facility. G. L. c. 233, § 20B. The statute enumerates six exceptions where "[t]he privilege granted hereunder shall not apply." Id. Two of those exceptions, G. L. c. 233, § 20B (a), (b), are at issue here.

_____

[5] G. L. c. 233, § 20B, defines "Communications" as including:

> "[C]onversations, correspondence, actions and occurrences relating to diagnosis or treatment, before, during, or after institutionalization, regardless of the patient's awareness of such conversations, correspondence, actions and occurrences, and any records, memoranda or notes of the foregoing."

General Laws c. 233, § 20B (a) (imminent harm exception), permits disclosure by a psychotherapist of otherwise privileged communications made by a patient in the following circumstances:

> "If . . . in the course of his diagnosis or treatment of the patient, [a psychotherapist] determines that the patient is in need of treatment in a hospital for mental or emotional illness or that there is a threat of imminently dangerous activity by the patient against himself or another person, and on the basis of such determination discloses such communication either for the purpose of placing or retaining the patient in such hospital, provided however that the provisions of this section shall continue in effect after the patient is in said hospital, or placing the patient under arrest or under the supervision of law enforcement authorities."

General Laws c. 233, § 20B (b) (court-ordered examination exception), allows disclosure of otherwise privileged communications by a patient to a psychotherapist:

> "If a judge finds that the patient, after having been informed that the communications would not be privileged, has made communications to a psychotherapist in the course of a psychiatric examination ordered by the court, provided that such communications shall be admissible only on issues involving the patient's mental or emotional condition but not as a confession or admission of guilt."

3. Analysis. As discussed below, the only exception to the psychotherapist-patient privilege that applies in the present circumstances is the imminent harm exception, G. L. c. 123, § 20B (a). We decline to extend our holding in Department of Youth Servs. v. A Juvenile, 398 Mass. 516, 524-526 (1986), to apply the court-ordered examination exception, G. L. c. 123, § 20B (b), to examinations, by a diagnosing or treating

psychotherapist, of a patient involuntarily committed to a mental health facility pursuant to G. L. c. 123, § 12 (b).

a.  Applicability of G. L. c. 123, § 20B (a), the imminent harm exception.  "Testimonial privileges 'are exceptions to the general duty imposed on all people to testify' and therefore 'must be strictly construed.'"  Commonwealth v. Oliveira, 438 Mass. 325, 330 (2002), quoting Three Juveniles v. Commonwealth, 390 Mass. 357, 359 (1983), cert. denied sub nom. Keefe v. Massachusetts, 465 U.S. 1068 (1984).  See Matter of Roche, 381 Mass. 624, 634 n. 12 (1980).

As pertinent to the facts of this case, the plain language of G. L. c. 233, § 20B (a), states that the imminent harm exception to the psychotherapist-patient privilege applies where two conditions are met.  First, a psychotherapist has determined in the course of diagnosis or treatment that a patient "is in need of treatment in a hospital for mental or emotional illness" or "there is a threat of imminently dangerous activity by the patient against himself or another person"; second, the psychotherapist's disclosure of the statement is "for the purpose of placing or retaining" the patient in a hospital for treatment of such mental illness.  Based on Brendel's testimony, K.I.'s statements indicated that he posed a threat of imminently dangerous activity against himself.  Brendel, a psychotherapist, disclosed the statements in order to place or retain K.I. in

Walden Behavioral Care, a facility for the treatment of mentally ill patients. Thus, on its face, the imminent harm exception appears to apply in these circumstances.

Nonetheless, the statutory language does not state explicitly that the imminent harm exception applies to statements made to a psychotherapist by a patient while the patient is involuntarily committed to a mental health facility. We consider the language of G. L. c. 233, § 20B (a), together with the statutory scheme governing civil commitment proceedings, see G. L. c. 123, §§ 7, 8, to ascertain whether the Legislature intended the imminent harm exception to be available in these circumstances.[6] See Commonwealth v. Semegen 72 Mass. App. Ct. 478, 480 (2008) ("where possible, we must seek to harmonize the provisions of any statute with related provisions where they are part of a single statutory scheme").

Involuntary civil commitment proceedings are commenced to prevent the imminent "discharge of [a patient from a facility] [when it] would create a likelihood of serious harm." Acting

---

[6] General Laws c. 123, § 7 (a), authorizes a superintendent of a mental health facility to petition for the commitment and "retention of any patient" at that facility upon a determination by the superintendent that "the failure to hospitalize would create a likelihood of serious harm by reason of mental illness." A court "shall not order the commitment of a person at the facility . . . unless it finds after a hearing that (1) such person is mentally ill, and (2) the discharge of such person from a facility would create a likelihood of serious harm." G. L. c. 123, § 8 (a).

Supt. of Bournewood Hosp. v. Baker, 431 Mass. 101, 105 (2000), quoting G. L. c. 123, §§ 7 (a), 8 (a), 11.  An element of proof in involuntary commitment cases is "the imminency of discharge." Acting Supt. of Bournewood Hosp. v. Baker, supra.  In the context of involuntary commitment proceedings, a "likelihood of serious harm" is defined as including "a substantial risk of physical harm to the person himself as manifested by evidence of, threats of, or attempts at, suicide or serious bodily harm." G. L. c. 123, § 1.  When a patient who has been involuntarily committed in a mental health facility communicates to his or her psychotherapist that he or she intends to commit suicide upon release, the communication manifests precisely that type of a "likelihood of serious harm" that falls within the meaning of G. L. c. 123, § 7 (a).

Brendel's testimony during K.I.'s involuntary commitment proceeding included statements K.I. had made during Brendel's diagnosis of K.I. to determine whether he was suicidal and what, if any, course of treatment should be pursued.  Based on these communications, Brendel determined that there was a "threat of imminent dangerous activity by the patient against himself," and disclosed K.I.'s communications "for the purpose of . . . retaining [K.I.] in [Walden Behavioral Care]."  See G. L. c. 233, § 20B (a).  The language supporting the imminent harm exception to the psychotherapist-patient privilege in G. L. c.

233, § 20B (a), tracks that which supports a patient's involuntary commitment to or retention in a mental health facility. The statutes therefore may be understood as working in concert to provide hospitalization and treatment to a patient who is at imminent risk of serious bodily harm. No language in either statute suggests that the Legislature intended to preclude a psychotherapist from disclosing a patient's statements in these circumstances, unless the psychotherapist has first warned the patient that a disclosure might be made.[7]

Indeed, the plain language of G. L. c. 233, § 20B (a), contemplates that statements might be made by a patient during the course of diagnosis and treatment that reveal that the patient would be a danger to himself or herself if released from a treatment facility, and permits disclosure of such statements for the purpose of retaining the patient in the facility for treatment. As we said in Commonwealth v. Lamb, 365 Mass. 265, 268 (1974) (Lamb), the exception in G. L. c. 233, § 20B (a), applies "to a situation in which the patient is not

_____

[7] By contrast, the Legislature clearly expressed its intent that a victim's communications to a sexual assault counselor be kept "confidential." See G. L. c. 233, § 20J ("sexual assault counselor shall not disclose such confidential communication without the prior written consent of the victim"; such communications "shall be inadmissible in any criminal or civil proceeding without the prior written consent of the victim"). Likewise, sexual assault counselors are not included within the definition of psychotherapists in G. L. c. 233, § 20B, and communications made to them are not subject to the exceptions to the psychotherapist-patient privilege in that statute.

institutionalized or is about to be discharged from an institution," and the patient makes disclosures during the course of treatment that reflect the patient's need for treatment of mental or emotional illness in a hospital setting.[8] This is consistent with the Legislature's intent in enacting G. L. c. 233, § 20B (a), which was to "dispense with the privilege when there is an imminent threat that a person who should be in custody will instead be at large."[9]  Lamb, supra.

K.I. argues that, at some point during the course of

---

[8] K.I. contends that, because a commitment petition under G. L. c. 123, § 7, may be filed only to seek retention of a patient in a mental health facility, the patient will "already [be] in the custody of State officials," and "institutionalized," and, therefore, the patient will not be "about to be discharged." Commonwealth v. Lamb, 365 Mass. 265, 268 (1974) (Lamb). Patients who are temporarily civilly committed must be discharged after the statutory commitment period, unless a petition is filed pursuant to G. L. c. 123, § 12 (d). See note 3, supra. Civil commitment proceedings determine whether an individual will be discharged from an institution. Only then would the "failure to hospitalize . . . create a likelihood of serious harm" under G. L. c. 123, § 7 (a). See Acting Supt. of Bournewood Hosp. v. Baker, 431 Mass. 101, 105 (2000) ("An element of proof in such cases is the imminency of discharge of the patient from the facility").

[9] We determined that the imminent harm exception was inapplicable in the circumstances in Lamb, supra at 268, because, there, the Commonwealth had filed a petition to commit the petitioner indefinitely to the treatment center as a sexually dangerous person, G. L. c. 123A, § 6, and a psychiatrist had been appointed "to examine [the petitioner] and report to the court" in connection with that petition. Lamb, supra at 266. Notwithstanding his claim that the circumstances are similar, K.I.'s situation is not analogous.

diagnosis and treatment of a patient who is temporarily committed on an involuntary basis, a psychotherapist's role will shift, and his or her examination of the patient will no longer be solely to treat, but also to determine whether an involuntary commitment petition should be filed.  At that point, K.I. contends, the patient's statements would no longer be used solely for treatment purposes, and therefore we should read the exception in G. L. c. 233, § 20B (a), to permit a psychotherapist to disclose communications only if the psychotherapist's determination of imminent harm is made "solely" or "exclusively" for treatment purposes.  We decline to do so, as this would in essence require that we "read into [the] statute a provision which the Legislature did not see fit to put there, [and to] add words that the Legislature had an option to, but chose not to include."  See Massachusetts Insurers Insolvency Fund v. Smith, 458 Mass. 561, 567 (2010), citing General Elec. Co. v. Department of Envt'l Protection, 429 Mass. 798, 803 (1999).

b.  Applicability of G. L. c. 123, § 20B (b), the court-ordered examination exception.  The policy objective of G. L. c. 233, § 20B (b), is "to permit a court to utilize expert psychiatric evidence by ordering an examination."  Lamb, supra at 269.  "[T]he statute recognizes that such court-initiated interviews entail certain risks for the person to be examined."

Id. Requiring a Lamb warning before such an examination, which is conducted in anticipation of a future proceeding, strikes the Legislature's intended "balance between the need for fairness and disclosure to the patient and full information for the court." Id. at 270.

K.I. argues that Department of Youth Servs. v. A Juvenile, 398 Mass. 516, 524-526 (1986), enlarged the scope of the exception in G. L. c. 233, § 20B (b), to cover examinations not made pursuant to court order, where the patient's communications will be used at a future legal proceeding, such as one seeking a patient's involuntary commitment pursuant to G. L. c. 123, §§ 7, 8. This argument is unavailing.

In Department of Youth Servs. v. A Juvenile, supra at 518, the Department of Youth Services sought to extend a juvenile's commitment to the department beyond his eighteenth birthday. To that end, it retained a clinician specifically to evaluate the juvenile on behalf of the department, and to testify at a hearing to extend his commitment. We concluded that the patient-psychotherapist privilege applied where the Commonwealth chose to have a psychiatrist interview a juvenile in custody and where the psychiatrist did not precede those conversations with the Lamb warnings. Id. at 525. See Commonwealth v. Callahan, 440 Mass. 436, 441 (2003). Our holding that Lamb warnings were required in those circumstances was based on the Commonwealth's

decision to retain the psychiatrist for the purpose of interviewing the juvenile in order to seek an extension of his commitment. We said there that "warnings are required by reason of G. L. c. 233, § 20B, . . . and do not depend on whether the Commonwealth chooses to interview . . . on its own initiative . . . or to seek court permission" (citation omitted). Department of Youth Servs. v. A Juvenile, supra at 526. We did not consider the applicability of G. L. c. 233, § 20B (a), nor did we conclude that G. L. c. 233, § 20B (b), would apply to any examination, whether court ordered or not.

Subsequently, in Commonwealth v. Seabrooks, 433 Mass. 439, 450-451 (2001), we defined the limits of our holding in Department of Youth Servs. v. A Juvenile, supra. We considered the examination of a potentially suicidal defendant and the subsequent admission of his statements, as well as the examining psychotherapist's opinion thereof, at his criminal trial. Commonwealth v. Seabrooks, supra at 446-447. The defendant in that case was charged with murder and had been placed on a suicide watch at the jail where he was being held pending trial. Id. at 446. A psychotherapist examined him to determine whether the defendant was suicidal and needed to be hospitalized because he was "at acute current risk of hurting himself." Id. To rebut the testimony of defense experts that the defendant suffered from an acute stress disorder, the psychotherapist was

allowed to testify, over the defendant's objection, that, based on the psychotherapist's suicide risk assessments, the defendant was not suffering from such a disorder.  Id. at 447.  We held that G. L. c. 233, § 20B (b), was not applicable in those circumstances because the psychotherapist's "examinations were not ordered by the court or sought by the prosecution, and were not conducted in anticipation of a future proceeding in which the defendant's mental capacity would be at issue."  Id. at 450-451.[10]

As with the circumstances of the examination conducted in Commonwealth v. Seabrooks, supra, G. L. c. 233, § 20B (b), does not apply here.  K.I.'s examination was not ordered by a court, nor sought by the Commonwealth for the purpose of supporting a petition seeking K.I.'s involuntary commitment.  As such, K.I.'s examination was "not conducted in anticipation of a future proceeding in which the [patient's] mental capacity would be at issue."  Brendel examined K.I. to determine the "care and treatment" K.I. needed.  See G. L. c. 123, § 12 (b).  In these

---

[10] The psychotherapist "conducted the risk assessments to identify whether the defendant was at imminent risk of harming himself and to recommend any necessary precautions or treatment." Commonwealth v. Seabrooks, 433 Mass. 439, 450 (2001).  We held that the psychotherapist's testimony properly was admitted under G. L. c. 233, § 20B (c), because the defendant had "introduced his mental and emotional condition as an element of his" defense.  Commonwealth v. Seabrooks, supra at 448.

circumstances, the exception provided by G. L. c. 233,
§ 20B (b), is not applicable.  There was no requirement that a
Lamb warning be given before Brendel examined K.I., and no error
in the admission of Brendel's testimony about K.I.'s statements
at the commitment hearing.

Judgment affirmed.